Isidob Wassebvogel, Spec. Ref.
Plaintiff seeks to recover upwards of $88,000 for work, labor and services performed by it for the defendant in accordance with a supplemental agreement which provided for the completion of the construction of certain sewers in the borough of Brooklyn.
On October 14, 1949, plaintiff entered into a contract with defendant for the construction of intercepting sewers for the so-called Owls Head Sewage Treatment Works. During the course of its work, plaintiff encountered subsoil conditions which were unforeseen by either contracting party. Accordingly, on July 14, 1950, plaintiff and defendant entered into the supplemental agreement here involved which enabled plaintiff to proceed with the completion of its construction work. The *568 physical work in the field was completed on June 25, 1952, but plaintiff’s books and records were not audited by the defendant until more than a year thereafter.
Plaintiff’s claim, in substance, is based upon its contention that pursuant to the supplemental agreement it is entitled to payments based upon the following items:
1 —10% for overhead in the computation of the final amount due it for the completion of the sewer work, said overhead running until October, 1953, when defendant completed its audit of plaintiff’s books and records.
2 — $6,728.04 for the rental of equipment, which amount, in effect, was disallowed by defendant.
3 — Interest on the above sums allegedly improperly withheld and unpaid by the defendant.
Defendant contends that plaintiff is not entitled to claim any overhead expense incurred after the date of the actual field work. Defendant further contends that the express language of the supplemental agreement, particularly the provisions of paragraph 6 thereof, bars the allowance of any 10% overhead payment to plaintiff in the final computation of moneys due it. In effect, therefore, the following items of plaintiff’s claims and demand for payment are disputed by defendant:
1 — $153,513.65 claimed as overhead by plaintiff (10% of the' final direct cost of $1,535,136.54).
2 — $84,432.51 claimed as 5% profit due plaintiff under the terms of the supplemental agreement. Defendant does not dispute plaintiff’s right to take a 5% profit but contends that the amount claimed by it is computed upon an improper basis, particularly with respect to the claimed 10% overhead.
3 — $10,504.07 in interest. Defendant contends that plaintiff is not entitled to any interest.
4 — $412,525.47 for rental value of equipment. Defendant alleges that the true value thereof is $405,797.43.
Plaintiff has concededly received from defendant for the work performed by it under the entire contract the sum of $2,276,742.81. The sum of $584,058.77 thereof represents the total amount that was due to plaintiff for all of its work under the original contract prior to the execution of the supplemental agreement. Both parties are in accord as to the following amounts claimed by plaintiff as expenses incurred by it in connection with the work performed under the supplemental agreement:
1 —$650,488.34 for labor.
2 — $132,222.58 for insurance.
3 — $347,157.44 for materials..
*569 Of the $412,528.47 claimed by plaintiff as its expense for the rental of equipment, defendant has conceded only $405,797.43 thereof, leaving the sum of $6,728.04 in dispute. Plaintiff thus arrives at the sum of $1,542,393.83 as compared with defendant’s figure of $1,528,726.49 as the total direct cost of its work under the supplemental agreement. Giving the defendant credit for $7,257.27 for dividends and insurance premiums, plaintiff then claims as the final net cost of its supplemental contract work, the sum of $1,535,136.56. It is plaintiff’s contention that 10% thereof, or the sum of $153',513.65, constitutes its allowable overhead expense in determining moneys due it pursuant to the supplemental agreement with defendant.
Compensation for the work to be performed by plaintiff under this agreement is set forth in paragraph 6 thereof, which provides as follows: “ the cost of performing the work * * * shall be determined in accordance with Items 1 to 9 of Article 26 of the Contract Agreement, it being expressly understood that this method of determining the cost is to be used solely for the purpose of preparing and paying partial estimates and that the final and actual cost of all the worlc shall be determined as hereinafter set forth.” (Italics added.)
It is apparent from the language of this provision that the 10% overhead method of determining plaintiff’s costs was intended only as a method of convenience adopted by the parties solely for the purpose of facilitating and expediting partial and interim payments during the progress of the work. Contrary to plaintiff’s contention, the use of this method was not intended, nor is it a proper one, for computing the final actual cost of the work to the defendant, inclusive of the direct cost and the overhead. The words of paragraph 6 “ as hereinafter set forth ’ ’ clearly refer to subdivisions (a) and (b) of paragraph 15 of the supplemental agreement, which subdivisions define the direct cost and the specific items of actual overhead expense that may be charged to defendant. In determining the final actual cost of the work, therefore, the computation must be made in accordance with the terms of paragraph 15, rather than the provisional method set forth in paragraph 6 for the payment of partial estimates only. It necessarily follows that in the computation of such final cost, for the purpose of fixing the final payment due plaintiff therefor, plaintiff is obligated under the unambiguous provisions of paragraphs 6 and 15 of the supplemental agreement to treat as overhead only the actual and allowable items of overhead as specified and restricted in the provisions of said paragraph 15 (b). ■ In the opinion of the *570 court, to sustain plaintiff’s contention that it had a right to utilize the 10% method of computing its overhead in connection with its demand for final payment from defendant for its work under the supplemental agreement would he an unjustifiable attempt to construe the language of paragraph 6 beyond its plain, clear, and ordinary meaning (Brainard v. New York Cent. R. R. Co., 242 N. Y. 125, 131-32; Hartigan v. Casualty Co. of America, 227 N. Y. 175, 179-180). The mere fact that the parties could have worded paragraph 6 more aptly and suitably is irrelevant. The inexactitude, inadequacy or ineptitude of the draftsmanship of the provisions of the supplemental agreement do not justify or warrant a total disregard or rejection by the court of the clear intent of the parties to employ the 10% method “ solely for the purpose of preparing and paying partial estimates.” (Standard Oil. Co. of N. Y. v. Central Dredging Co., 225 App. Div. 407, 410, affd. 252 N. Y. 545; Cameron-Hawn Realty Co. v. City of Albany, 207 N. Y. 377, 381-382.)
Defendant, however, improperly limited plaintiff’s items of overhead to the date of the completion of the field work. The cost to a contractor of performing work does not begin with the actual physical labor in the field, nor does it stop when this work is completed. Prior to such actual field construction, the contractor must employ engineers, draw his plans, prepare and submit his bids, provide for the rental of equipment and attend to a multitude of other details that will enable him to proceed once his bid is accepted and approved. Similarly, following the completion of work in the field, the contractor must prepare to close his books and records, negotiate with materialmen, subcontractors, persons from whom he rented equipment, adjust property damage, public liability and workmen’s compensation claims and, ultimately, have his books and records audited by defendant. I hold, therefore, that all of the expenses incurred by plaintiff after June 25, 1952, the date of actual physical completion of the construction work in the field, up to the time defendant made payment to plaintiff after an audit of its books are properly chargeable as costs of the performance of the work under said.contracts for the purpose of determining plaintiff’s profit, if any.
The record shows that defendant deducted the sum of $6,728.49 from the cost of the supplemental agreement work. This amount represents part of the rental cost of some of plaintiff’s small equipment, such as hose, pumps, and expendable electrical items. The reason given by defendant for making this deduction is that such amount represents an excess over *571 the actual cost of the equipment to the plaintiff. It is significant that the rental rates charged by plaintiff were agreed to and formally approved in writing by defendant before the equipment was used. Nothing in the supplemental agreement authorized a deduction by defendant merely because the eventual rental cost of the equipment exceeded its initial cost to plaintiff. On the contrary, the supplemental agreement provides for the actual and reasonable cost of £ £ maintenance, operation and rental of or reasonable rental value of contractor-owned necessary * * * equipment ’ ’. Giving due consideration to the nature of the equipment involved, to the fact that such equipment was concededly used on the construction work here involved, and to the terms of the contracts between the parties, I hold that the $6,728.49 disallowance by defendant was improper. The full amount expended for the rental of equipment used on the construction work here involved must be considered as part of the cost to plaintiff for performing the work in order to determine its profit, if any.
The sole ground upon which defendant attempts to defeat plaintiff’s claim for interest on moneys improperly deducted or withheld from plaintiff is its contention that interest does not run against the municipality until a claim is filed with the comptroller and a demand made upon him. In support of this argument, defendant has cited Rapid Tr. Subway Constr. Co. v. City of New York (259 N. Y. 472). Nothing in this case, however, serves to defeat plaintiff’s claim in the instant action with respect to interest. Plaintiff does not ask for interest upon a claim against the city. Here, defendant was required to make certain payments in accordance with a written agreement. The documentary evidence shows that the comptroller of the City of New York had full knowledge that plaintiff demanded its moneys and that it claimed the amounts set forth in its requisitions and estimates as due it. These requisitions constituted demands for payment and upon failure to make such payment, defendant became liable for interest upon any amounts so due and withheld, within the meaning and intendment of the cited case (Rapid Tr. Subway Constr. Co. v. City of New York, supra, p. 495). Interest must be deemed to be an incident of just compensation inasmuch as defendant’s liability is predicated upon the obligations set forth in a written contract (Prager v. New Jersey Fidelity & Plate Glass Ins. Co., 245 N. Y. 1, 6; Rusciano & Son Corp. v. State of New York, 201 Misc. 690, 700, affd. 281 App. Div. 733). Any interest due plaintiff, however, must be computed at a rate limited to 3%. (General Municipal Law, § 3-a.)
*572 Contrary to defendant’s contention, in computing the cost of the work, there was no need for plaintiff to separate in its books the overhead expenses in connection with the supplemental agreement from the overhead expenses incurred as a result of the work under the original contract. There is no such requirement or provision in either agreement for such separation. If the parties had intended that there be a division or allocation of overhead expenses, either agreement could have and should have so provided. In the absence thereof, any attempt now by defendant to apply an allocation formula for which there is no contractual basis must be deemed arbitrary and improper.
In computing the final amount due plaintiff, if any, the following items are disallowed to it as costs of the work:
1 — $675.75 for business promotion; .
2 — $261 for charities.
The sum of $10,498.33 charged off as an inventory cost, payments by plaintiff to Clevorock, Inc., and the amount expended for franchise taxes are allowed as proper costs of the work plaintiff performed.
It should be noted that by its own final certificate, defendant acknowledges that there was to be paid to plaintiff the sum of $2,288,601.55. Likewise, defendant concedes that plaintiff has received to date the sum of $2,276,743.81. Defendant, therefore, owes plaintiff a minimum of $11,857.74, representing the difference between the amount due and the amount concededly paid. An order is to be submitted herein, however, in which shall be computed the actual amount due plaintiff in accordance with the determinations and findings above set forth.
Judgment is rendered for plaintiff accordingly. Settle order on or before June 28, 1957, on one day’s notice. Defendant may have a 30-day stay of execution.
The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.