THE SECURITY SEWAGE EQUIPMENT CO., APPELLANT, *v.* MCFERREN ET AL., APPELLEES.

(No. 1159—Decided September 19, 1967.)

*Mr. Jerry Gordon,* for appellant.
*Mr. Harry B. Chalfant* and *Mr. Carl F. Allebaugh,* for appellees.

LYNCH, J. On October 30, 1964, defendants, who are the owners and developers of a residential subdivision of approximately one hundred fifty lots which are located in the vicinity of

Toronto, Ohio, executed a written purchase contract with plaintiff for the sale, delivery and installation of a sewage treatment plant on defendants' property. The total sum for the sale, delivery and installation of the trash trap final tank and three acration tanks was $11,270. There was also a provision that two acration tanks that would be needed later would cost $4,400 plus tax.

Plaintiff shipped most of the tankage from its factory in Garfield Heights, Ohio, to defendants' property in early December, 1964. The total weight of the equipment was estimated to be between 150,000 to 200,000 pounds. Plaintiff's evidence indicates that this equipment was shipped at the request of defendants.

In the meanwhile, state and county officials communicated with defendants as to compliance with Section 3701.18 of the Revised Code, the pertinent parts of which are as follows:

"No * * * corporation, * * * or officer or employee thereof, or other person shall provide or install a * * * sewerage or purification or treatment works for * * * sewage disposal, or make a change in any * * * sewerage, or sewage treatment works until the plans therefor have been submitted to and approved by the department of health. * * *."

Mr. H. W. Watson, engineer for defendants, testified that previous to negotiations for the purchase of this sewage disposal plant, he had sent plans to the State Board of Health for the proposed sewage disposal system. The plans were detailed as to the pipe system, but were not detailed as to the disposal plant. However, the location of the disposal plant was shown on the plans. The State Board of Health never approved the application of defendants. It was not an outright refusal, but a holding in abeyance to make a survey of the general area for appropriate recommendations for a sewage disposal system.

Defendants never paid anything on the contract.

Plaintiff sued for breach of contract, and defendants filed an answer alleging impossibility of performance because of inability to obtain permits from the State Department of Health and the Jefferson County officials. Defendants alleged further that they were induced to enter into this contract by reason of the assurance and representations of plaintiff that its equip-

ment would be approved by the Jefferson County officials and the State Department of Health.

The trial court held that the above quoted provisions of Section 3701.18 of the Revised Code must be read into and made a part of the contract, and that the contract was unenforceable because a valid or enforceable contract to install and to complete and make ready for use a sewerage system implies or presupposes as a condition precedent the approval of the State Department of Health.

The contract has nothing in it regarding who had the responsibility of obtaining approval from the State Department of Health for this proposed sewage disposal plant. However, the evidence of both the plaintiff and defendants is to the effect that the procedure to obtain approval of the State Department of Health for the construction and installation of a sewage disposal system is for the owner, or his agent, to file an application, together with the plans of the proposed sewage disposal system, with the State Department of Health.

Section 6112.03 of the Revised Code provides that applications for approval of plans for the construction and installation of sewage disposal systems shall be made in the manner and form prescribed by the State Department of Health. Plaintiff attempted to introduce as plaintiff's exhibit No. 10, a bulletin issued by the Ohio Department of Health on the laws and administration of sewage treatment. The trial court did not rule as to its admissibility, but we hold that this exhibit was admissible. The procedure for submitting plans for a proposed sewage disposal system appears on page one of this bulletin as follows:

"Plans must be submitted by the owner, or the engineer or architect, to the District Office having jurisdiction, * * *."

Our conclusion from both the facts and the law is that defendants had the responsibility to make the application to the State Department of Health for the construction and installation of this sewage disposal system. Therefore, the trial court was in error in holding that defendants did not have this responsibility.

Defendants presented testimony that Mr. England, the salesman for plaintiff, made statements to defendants before the

contract was signed that he would obtain approval from the State Department of Health for the installation and operation of the sewage disposal plant manufactured by plaintiff. Mr. England denied making such statements. On November 13, 1964, plaintiff sent defendants a form letter in which the first paragraph was as follows:

"The State Department of Health will require four copies of your plans and specifications and four copies of the plot plan, along with a letter from the owner requesting approval of the installation. This approval can consume anywhere from a week to six weeks time. In some cases, the state will require a start-up and inspection form."

An officer of plaintiff also testified that he received a telephone call from defendants in early November relative to delivery of the sewage disposal plant and he raised the question of whether approval from the state had been obtained. The answer was that defendants were buying this job and not the state of Ohio.

The evidence indicates that the lack of approval of this proposed sewage disposal system by the State Department of Health and the Jefferson County officials was not any objection to the sewage disposal plant of plaintiff, but because the plan of the sewage disposal system was to empty the effluent from the sewage disposal plant into a dry swale.

Our conclusion is that defendants' contention that they were induced to enter into this contract by reason of the assurances and representation of plaintiff that it would obtain approval of the State Department of Health and the Jefferson County officials is without merit.

Where a person enters into a contract knowing that permission of governmental officers will be required during the course of performance, it is his duty to obtain the permit so that he can perform. The risk of inability to obtain it is on him, and the fact that such permission is conditioned on a performance that is more burdensome, expensive, or difficult than would be ordinarily expected but which might reasonably have been contemplated does not constitute an excuse for nonperformance. *London & Lancaster Indemnity Co. of America* v. *Board of County Commissioners of Columbiana County*, 107 Ohio St. 51;

*Thornton* v. *Arlington Independent School District,* 332 S. W. (2d) 395 (Texas Civil Appeals); *Fischler* v. *Nicklin,* 51 Wash. (2d) 518, 319 P. (2d) 1098; *Hein* v. *Fox,* 126 Mont. 514, 254 P. (2d) 1076; *State for Use of Lane* v. *Dashiell,* 195 Md. 677, 75 A. (2d) 348; *Standard Oil Co. of New York* v. *Central Dredging Co.,* 225 App. Div. 407, 233 N. Y. Supp. 279, affirmed 252 N. Y. 545, 170 N. E. 137; 17A Corpus Juris Secundum 611, Contracts, Section 463 (1); 6 Corbin on Contracts 435, Section 1347.

The evidence indicates that plaintiff was aware of the requirements of Section 3701.18 of the Revised Code as to obtaining approval of the State Department of Health, and it called this to the attention of defendants.

Defendants were aware that approval of the State Department of Health for their proposed sewage disposal system was necessary. Apparently, they regarded obtaining such approval as a routine matter, because their actions indicate that they did not anticipate any difficulty in obtaining such approval.

The evidence indicated that before the State Department of Health would approve this proposed sewage disposal system, the plant would have to be operated either by a sewage district of the county or by a public utility.

The defendants attempted to have the county commissioners form a sewerage district to operate this proposed sewage disposal system without success. The defendants did not make any effort to form a public utility to operate this proposed sewage disposal system, and plaintiff contends that the defense of impossibility of performance is unavailable to the defendants because the defendants have failed to prove that their performance was impossible.

The evidence indicates the existence of a serious problem of the financial feasibility and general practicability of this proposed sewerage system. The plan of this proposed sewerage system submitted by defendants' engineer had the effluent from the sewage disposal plant emptying into a dry swale, and the State Department of Health would not approve this unless the effluent was conveyed by tile to the Ohio River. The distance from the proposed sewage disposal plant to the Ohio River is 2,500 feet, and the intervening land was owned by persons other than the defendants. The estimated cost of the tile sewer to

the Ohio River without obtaining easements or right of way was from $18,000 to $25,000.

The State Department of Health recommended that sewerage facilities for this subdivision be connected to the Toronto municipal system if it could be worked out. If there were no possibility for this being worked out, it was suggested that the county put in a larger plant closer to the Ohio River to serve this allotment. This is the apparent explanation of why the county would not agree to take the responsibility of operating this proposed sewage disposal system and why defendants made no effort to form a public utility.

Our conclusion is that the formation of a public utility by defendants for the purpose of operating this proposed sewage disposal system is legally possible. It is apparent that defendants did not anticipate such action, and particularly did not expect to pay the additional expense that will be required to tile the effluent to the Ohio River if this proposed sewage disposal system is to be operated by a public utility. However, this could have been ascertained by the defendants prior to making this contract. The law was the same before this contract was made as it is now.

Under the circumstances of this case, we cannot say that it is legally impossible for defendants to comply with the provisions of Section 3701.18 of the Revised Code. See Restatement of the Law on Contracts, Page 847, Section 456, Comment c. We recognize that this contract provides for the installation of the sewage disposal plant by plaintiff; however, the evidence indicates that plaintiff is ready, willing and able to install this sewage disposal plant but cannot do so because of defendants' inability or failure to comply with Section 3701.18 of the Revised Code.

We, therefore, hold that defendants have breached their contract with plaintiff. The evidence of plaintiff is that its damages for breach of this contract is $12,231.16; however this sum includes an item of $100 for attorney fees which is not allowable as damages. We hold that plaintiff is entitled to judgment against defendants for $12,131.16 with interest from October 3, 1966.

The judgment reversed and final judgment is rendered for

plaintiff against defendants for the sum of $12,131.16 with interest from October 3, 1966.

*Judgment reversed.*

O'NEILL, J., concurs.

JONES, P. J., dissenting. I dissent on the basis that I agree with the trial judge's findings of fact and conclusions of law and would hence affirm entry appealed.