# J. R. DUNBAR v. JOHN FLEISHER.

### APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF PERRY COUNTY.

Argued May 26, 1890—Decided October 6, 1890.
[To be reported.]

1. When an obligation, signed by a surety, is given in pursuance of a provision therefor in a contract between his principals and the obligee, and it expressly refers to such contract, it should be construed in the light which the principal contract throws upon its purpose and intended scope.

(*a*) A contractor for the erection of a county bridge sub-let the mason work by a written contract providing that he should pay for two thirds thereof when that quantity should be done, and if he should then give security for the price of the remainder, the same should be paid when the work was fully completed.

Statement of Facts.

(b) The agreement provided further, as an alternative, that the sub-contractors might give security "for the money for the balance of the work to be done," in which case the contractor should pay for said remaining one third of the work in advance of its commencement by the sub-contractors.

(c) After the sub-contractors had done two thirds of the work, and had been paid therefor, they received from the contractor an order on the county commissioners for the price of the remaining one third, and gave to him a paper, executed by a surety, reciting said order and engaging for " the faithful performance of said mason work to said bridge as per contract:

2. Construed in the light of the principal contract, the obligation of the surety did not embrace any liability for defects in the two thirds of the work already done by his principals, but was simply an engagement, in consideration of an advance payment for the remaining one third, that they should do the work so paid for.

3. Wherefore, the order on the county commissioners having been refused payment, although accepted by the sub-contractors on the assurance of the contractor that it would be promptly paid, the consideration of the surety's undertaking wholly failed, and he was not liable even for a failure of the sub-contractors to do the rest of the work; nor were they bound to perform it.

4. The fact that payment of the order was refused because there were defects in the work already done by the sub-contractors, did not affect the liability of either their surety or themselves as to the last one third of the work: by the terms of their contract they were not bound to do that work until its price should be paid or secured to them.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 34 July Term 1886, Sup. Ct.; court below, No. 25 November Term 1883, C. P.

On September 11, 1883, Josiah R. Dunbar brought assumpsit against John Fleisher, upon a written engagement of the defendant a copy of which is given below. The defendant pleaded non-assumpsit.

At the trial on April 19, 1884, the following facts were shown:

In the year 1883, the plaintiff took a contract from the commissioners of Perry county for the erection of a county bridge across Sherman's creek. On June 23, 1883, he sub-let the stone work to Jesse Harper and John Famous by a written contract, which provided that Harper and Famous should do all the mason work for the bridge at certain rates per perch and in a workmanlike manner, and proceeded:

"And the said J. R. Dunbar shall pay for said mason work $50 upon the signing of this agreement, and when one third of the work is done the balance of the price for the one third work done, if more is yet due, and then he shall also pay to the parties of the first part $50 on the next third of the work to be done; and when two thirds of said work is done, then the balance of the amount due on the said two thirds of work, if any is yet due, shall then be paid; and then for the balance or one third work left to be done, in case J. R. Dunbar shall give security for the payment of said last one third of work when the same is fully finished, then the said parties shall be paid when said work is finished, or else said parties of the first part can give security for the money for the balance of the work to be done; that is, after the two thirds is done, and then said J. R. Dunbar shall in such case pay the balance for said work before the said parties shall commence the same.

"In witness whereof," etc.

Harper and Famous put up two thirds of the stone work specified in their contract, and received their pay therefor from the plaintiff.

On July 23, 1883, they met the plaintiff at the office of George Zinn, a justice of the peace, the scrivener and custodian of their agreement, for the purpose of making some arrangement respecting the remaining one third of the work yet to be done by them. It was then agreed between them and the plaintiff, that the plaintiff should give to them an order on the county commissioners for $62, and that they should give him security that the remainder of the work should be done in accordance with the contract. They agreed to accept the order, upon being assured by the plaintiff that there was no doubt about its payment by the commissioners, as they had in their hands over $1,100 that was coming to the plaintiff upon his contract with them. Accordingly, the plaintiff gave the order for $62 and Harper and Famous procured the defendant Fleisher to sign the following undertaking, prepared by Zinn, which they left in Zinn's hands with the other contract:

"Whereas, J. R. Dunbar has this day given to Jesse Harper and John Famous an order on the county commissioners for $62, or the amount that shall be due them for mason work at the completion of the bridge in Penn township, Perry county,

Pennsylvania.   Now, in consideration of $1 to me in hand paid, I hereby become security for said Harper and Famous for the faithful performance of said mason work to said bridge, as per contract with said J. R. Dunbar.        JOHN FLEISHER."

Testimony for the defendant tended to show that the paper signed by Fleisher was to contain a proviso that the order should be accepted by the county commissioners, but that this was omitted by mistake of the scrivener.

Later, on the same day, the county commissioners notified the plaintiff that the stone work already done by Harper and Famous was not in accordance with the specifications therefor, and that unless it was made so they would refuse to make the contract payments for the bridge ; and on presentation of the order given by the plaintiff to Harper and Famous, the commissioners declined to honor it for the reason that the work already done was defective.   The order never was paid, and Harper and Famous never did the remaining one third of the work.

The testimony tended to show that the two thirds of the mason work that had been done was in fact defective and not in accordance with the specifications.   It was taken down and rebuilt by the plaintiff at a cost of $186, and he completed the masonry himself.

At the close of the testimony, the court, BARNETT, P. J., charged the jury as follows :

[The construction of this article of agreement is for the court, and in our opinion there can be no recovery against Mr. Fleisher by virtue of his contract, and therefore we direct you to return a verdict in favor of the defendant, as a matter of law.] [1]

A verdict having been rendered for the defendant as directed, judgment was entered thereon, when the plaintiff took this appeal, assigning for error :

1. The charge of the court in [ ] [1]

*Mr. B. F. Junkin* (with him *Mr. J. E. Junkin*), for the appellant :

1. The defendant's undertaking was for the benefit of his principals, Harper and Famous.   They, and not he, were disappointed by the non-payment of the order for $62; and, as the refusal of the commissioners to pay it was on account of

the neglect of Harper and Famous to do the work already completed, in a proper manner, the latter cannot complain of that refusal, and neither can Fleisher, their surety.. His undertaking covered the entire mason work on the bridge, so as to entitle the plaintiff to recover from him the loss on the two thirds which had already been done, as well as for the one third which his principals have never done at all. Even if the court was right, however, in holding that he stood security only for the last one third, the plaintiff was entitled to have his damages assessed by the jury, as Harper and Famous never did any part of that one third.

2. Fleisher's undertaking was a contract of suretyship. The language is, "I hereby become security." The word security has an established and well known meaning in the minds of most people, and indicates an obligation to stand for a sum absolutely, unless discharged by some act or negligence of the other party: Marberger v. Pott, 16 Pa. 9. It imports suretyship and not guaranty: Allen v. Hubert, 49 Pa. 259; Reigart v. White, 52 Pa. 438; Sitgreaves v. Griffith, 2 W. N. 705; Lloyd v. Thayer, 2 W. N. 291; even though the surety sign some days after the principal has executed the contract: Hunt v. Adams, 5 Mass. 362; Woods v. Sherman, 71 Pa. 104. But, supposing Fleisher to be only a guarantor, as he undertook that Harper and Famous should faithfully perform the mason work in accordance with their contract, he was fixed the moment they failed in its performance: Campbell v. Baker, 46 Pa. 243; Roberts v. Riddle, 79 Pa. 468.

*Mr. W. N. Seibert,* for the appellee:

The undertaking of the defendant was given in pursuance of the alternative provision in the original contract between the plaintiff and Harper and Famous, respecting the last one third of their work, and to argue that it was intended to cover the first two thirds also, is to do violence to the terms of the writings. As the plaintiff neither paid nor secured the money for the last one third of the work, Harper and Famous never became bound to do it, and hence, whether the defendant was a surety or a guarantor, he never became liable to the plaintiff. If it be true, that the non-payment of the order was on account of the fault of Harper and Famous, that in no wise affects the

defendant. The intent of the parties, as collected from the language of the instrument, and the circumstances attending its execution, is the test for determining the character of the obligation : Marberger v. Pott, 16 Pa. 13 ; and that test sustains the judgment of the court below.

OPINION, MR. JUSTICE WILLIAMS :

This case depends on the construction of the undertaking of Fleisher to become security for Jesse Harper and John Famous. Dunbar had contracted with the commissioners of Perry county to build a bridge across Sherman's creek, and had sub-let the stone work to Harper and Famous. Their contract was in writing, and provided for payment to the contractors in advance of their work. Fifty dollars was to be paid at the date of the contract, and, on the completion of one third of the stone work, any balance due was to be paid in full. Fifty dollars was likewise to be paid in advance on the next third, and any balance due was to be paid when that third was completed. The whole price of the last third was to be advanced, if Harper and Famous should give " security for the money for the balance of the work to be done ; that is, after the two thirds is done." The two thirds were built to the satisfaction of Dunbar, and paid for by him in accordance with the contract. As a means of advancing the remaining one third, he gave to Harper and Famous his order on the county commissioners for sixty-two dollars, which he assured them would be paid, and Fleisher became their security by a paper dated the 23d July, 1883, which recited the giving of the order for sixty-two dollars, the amount to become due at the completion of the bridge, and contained this undertaking : " I hereby become security for said Harper and Famous for the faithful performance of said mason work to said bridge, as per contract with said Dunbar."

What now is the extent of Fleisher's undertaking and consequent liability ? The plaintiff contends that he is liable generally for the performance of the entire contract by Harper and Famous, and seeks to recover in this case, not only for the last third of the work, but for the money paid for the two thirds, which had been settled for before the undertaking was entered into. But it should be borne in mind that the paper signed by Fleisher was given in pursuance of the contract between his

principals and Dunbar, to which it expressly refers, and it should be read in the light which that contract throws upon it. Turning to that instrument, we find that it contemplated no security to be given by either party, except in connection with the payment to be made for the last one third of the work. The provision relating to this subject is in these words: "In case J. R. Dunbar shall give security for the payment of said last one third of work when the same is fully finished, then the said parties shall be paid when said work is finished, or else said parties of the first part can give security for the money for the balance of the work to be done ; that is, after the two thirds is done; and then said J. R. Dunbar shall in such case pay the balance for said work before the parties shall commence the same." Dunbar had the right to retain the price of the last one third of the work in his own hands, by giving security that it should be paid when the work was done. If he did not do this, then the contractors could give security "for the money for the balance of the work to be done ; that is, after the two thirds is done," and call upon him to pay it to them in advance.

The same scrivener who prepared this agreement, and was its custodian, was applied to by the parties to prepare the necessary undertaking for a surety to sign, so that Harper and Famous would be entitled to call upon Dunbar for payment in advance for the last one third of the work. Dunbar undertook to pay the money in advance, and, as a means of payment, drew his order on the county commissioners for sixty-two dollars, which he assured them would be promptly paid. In consideration of such advance payment, Fleisher undertook that Harper and Famous should do the work for which they were so paid. This was the kind of security for which the original contract provided; it was what was in the minds of all the parties at the time, and it is the fair legal effect of what was done by them. If the money had been paid by the county, then Fleisher would have been liable for performance by his principals of the work which the money paid for, or for its return to Dunbar. But the whole arrangement failed. The county did not pay the money upon Dunbar's order. Harper and Famous got no money therefor from Dunbar. The advance payment upon the last one third of the stone work was not made, and, presumably for that reason the work was not

### Syllabus.

done.   By the terms of their contract, they were not bound to do the work, unless the price of that one third was secured to them by Dunbar, or paid to them in advance on their giving security for it.   Dunbar neither gave the security nor paid the money in advance, and the consideration for Fleisher's undertaking wholly failed.

The court below committed no error in giving the binding instruction complained of, and the judgment is therefore

Affirmed.

