## Martz v. Continental Casualty Company, Appellant.

Argued April 24, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

188

*Sanford M. Chilcote,* with him *Dickie, Robinson & McCamey,* for appellant.

*W. H. Coleman,* with him *Meyer Umansky,* for appellee.

OPINION BY PARKER, J., July 19, 1940:

This is an action in assumpsit brought by Paul D. Martz against Continental Casualty Company for the value of collateral deposited with Continental to indemnify it in acting as surety for the Allegheny Athletic Association of McKeesport. The case was tried by a judge without a jury and judgment was entered for the plaintiff for the amount of the claim with interest. That judgment must be affirmed.

The Athletic Association held a club license issued by the Pennsylvania Liquor Control Board for the dispensing of liquors for the period beginning May 1, 1937, and ending April 30, 1938, and Continental, the defendant, furnished to the Commonwealth the bond required by statute. About March 1, 1938, the club proposed to make application to the board for a renewal of its license for the year beginning May 1, 1938. By §409 of the Act of November 29, 1933, P. L. 15, Sp. Session (47 PS §744-409), an applicant for a renewal must furnish a new surety bond before the license is issued. The club applied for a new bond to Continental which offered to furnish the bond provided $1,000 cash collateral was deposited with it and certain agreements

to indemnify Continental were given by the officers of the club. The club being without available cash, Martz, its secretary, agreed to furnish the money from his private funds. The cash collateral was deposited by Martz, written agreements of indemnity were made, and the bond was furnished by Continental and deposited with the board with the application for a renewal.

On April 30, 1938, the board revoked the license for the year beginning May 1, 1937, and forfeited the bond given for that year. The board also refused the application for renewal and returned the new bond to the club which in turn surrendered it to defendant. That new bond never became operative. The board made demand on Continental for $2,000, the amount of the forfeited bond for the year beginning May 1, 1937. Thereupon Continental refused, upon Martz' demand, to return the cash collateral and undertook to apply it toward satisfaction of the obligation for which it had become liable as surety.

The defendant, the appellant, contends that under the terms of the written agreement, to which we will refer, it is entitled to apply the collateral in discharge of its obligation as surety to the Commonwealth.

On March 3, 1938, Continental delivered to the club its surety bond for $2,000 in favor of the Commonwealth and a general agreement of indemnity for the protection of Continental was entered into by the club and Continental. The latter agreement recited that it had received from the club a certified check for $1,000. Plaintiff then complained that the $1,000 was his property and not the property of the club. Thereupon that agreement of indemnity was surrendered and two new agreements were executed and delivered. As of the same date a general contract of indemnity signed by plaintiff and two other officers of the club as individuals was delivered to Continental. That agreement recited the fact that those individuals

had theretofore required and might thereafter require suretyship upon certain obligations of suretyship on their behalf or on behalf "of some other person or corporation" and had at that time applied to Continental to execute such instruments. Those individuals undertook, inter alia, as follows: "Third—That the Surety also looks to and relies upon the property of the Indemnitor, and the income and earnings thereof, and shall also at all times have the right to rely upon, look to, and follow and recover out of the property which the Indemnitor now has or may hereafter have, and the income and earnings thereof, for anything due or to become due it, the Surety, under this agreement, such suretyship having been by the Surety entered into for the special benefit of the Indemnitor and the special benefit and protection of the Indemnitor's property, its income and earnings."

At the same time the defendant, recognizing that the collateral deposited was the property of plaintiff and not the property of the club, as a part of the same transaction entered into an agreement with plaintiff relating to the collateral deposited by him. That agreement recited the execution of the bond for the club and the receipt of the cash from plaintiff and then provided: "3. The said Surety shall have the right in its discretion to retain said property until the liability of the said Surety, on account of having executed or procuring the execution of said bond or bonds or any other bond or bonds for or on behalf of said Principal or at his request, shall cease or determine as hereinafter provided and until all premium on said bond or bonds shall have been paid as provided for in the agreement of said Principal which agreement is hereby made a part of this receipt." This was followed by a provision that upon full payment of premiums and termination of liability on the part of Continental the property deposited should be returned to the depositor.

The court below was of the opinion that while the

collateral agreement was under seal, which imported a consideration, yet "that there was, in fact, no consideration for plaintiff's assumption of any liability other than that which might arise under the license and bond from May 1, 1938, to April 30, 1939—and which bond never became effective."

We are in accord with the result reached by the court below but we come to that end by a somewhat different course. It is not necessary to have recourse to the legal precepts which deal with absence of consideration or failure of consideration or with contracts which become impossible of performance by the happening of subsequent and not anticipated happenings, except insofar as we must determine by parity of reasoning the consequences, if we conclude that the contract cannot be enforced. Continental agreed to furnish a bond executed by it to be delivered to the board together with an application for renewal of license, such bond to be binding *if*, and only if, the board should issue a new license to the club. The issuing of the new license was a condition precedent to the bond becoming an obligation of Continental and as a result the bond never became operative. "No liability can arise on a promise subject to a condition precedent until the condition is performed, and if by lapse of time or for any other reason the condition cannot be performed no liability can ever arise upon the promise": 3 Williston on Contracts §1970. The base of the whole transaction fell.

The provisional delivery of the bond, the general agreement of indemnity and the collateral agreement as to the $1,000 deposit were each a part of one entire transaction and were not independent undertakings. The evidence clearly establishes that fact and it was so found by the trial judge although it might be implied as a matter of law from the admitted facts. When the board refused to issue the new license the entire transaction came to an end. The mutual promises were no longer binding; the right to hold the collateral was

192

terminated: *Dunbar v. Fleisher,* 137 Pa. 85, 20 A. 520. The obligations terminated as a result of the failure of a condition precedent to happen, a contingency which was in the contemplation of the parties. Under such circumstances reason and justice require that the parties be relieved from their mutual undertakings. The prime purpose of the entire contract could not be accomplished. As the term "collateral" implies subordination to some other promise, it requires exceptional circumstances or very definite language to hold a collateral agreement binding when the principal agreement by its terms becomes inoperative. There are no circumstances here warranting such a construction and it is certainly the duty of the court to avoid constructions which are harsh if it is reasonable to do so. Failure of consideration was but an incident to the termination of the entire agreement by its terms.

It was suggested by appellant on oral argument that the holding of the court below would unfairly deprive Continental of any remuneration for its time and expense in doing what it did do. We are not called upon to decide that question and the club is not a party to this suit. It is sufficient to say that such result does not necessarily follow. We get some light by considering the comparable situation that arises when a party excused by impossibility has partly performed without receiving compensation. In such a case "justice requires the imposition of a quasi-contractual obligation on the party receiving such performance to pay its fair value": 3 Williston on Contracts §1972. In any event, it would seem that Continental received fully as much as it was entitled to receive when the regular premium was paid in advance for a full year.

The court below also found as a fact that the provision in the contracts of indemnity with reference to making the collateral liable for anything else than such liability as arose by reason of issuing the new bond was inserted in the contract by fraud or mistake. We have

some doubt about the sufficiency of the testimony to sustain such finding although we deem it unnecessary to decide that question. We prefer to place our decision upon the ground stated.

Judgment affirmed.