Narciso FRIGILLANA *v.* Natividad M. FRIGILLANA

78-97                                                     584 S.W. 2d 30

Opinion delivered July 9, 1979
(Division I)

298

*Gean, Gean & Gean,* for appellant.

*Thompson & Paddock,* for appellee.

JOHN A. FOGLEMAN, Justice. The parties in this case were married for 29 years. On December 13, 1968, they entered into a "Property Settlement Agreement," reciting the existence of marital differences, making it impossible for them to continue to live together. The agreement was signed in the Panama Canal Zone, where they resided. On January 10, 1969, an interlocutory decree of divorce was entered in the United States District Court for the Canal Zone. The court confirmed and approved the agreement between the parties in this decree. On July 30, 1969, a final decree was entered and the husband, Narcisco Frigillana, appellant here, was directed to pay $275 per month for support of the wife, Natividad Frigillana, appellee here.

Both parties were near retirement age when the agreement was signed. The agreement was entered into as a final settlement of all property rights. By it, each party released the other from any and all claims and demands, including all claims of either party upon the other for support and maintenance. Specific items of property were allocated to the

respective parties. The following clause of the agreement gives rise to this litigation:

> FOURTEENTH: The parties, in contemplation of the time subsequent to the retirement of the husband and his death thereafter, agree that the husband will execute whatsoever documentation as may be required by the United States Civil Service Commission to carry out the specific desire and will of the husband and the agreement of the parties hereto that the wife, the party of the second part hereto, will receive one half of all benefits which may then accrue and one half of such benefits to the husband's then widow, if any, or if no widow, then all to the wife, party of the second part herein. It is further agreed as a part of this agreement that the husband will take the necessary steps to carry out the provisions herein concerning the said Commission and will in no way change the above designation of the wife as beneficiary with the said Commission.

Appellant retired in March 31, 1972, at the age of 69. He was unmarried at the time, but subsequently remarried the woman to whom he had been married before his marriage to Natividad. (In order to avoid misunderstanding, we will use her first name.) He did not execute any document which would have carried the agreement as to survivor's benefits under civil service retirement into effect. Instead, he took a full annuity, without survivor's benefits, and as a result, he received higher monthly benefits as long as he lived than he would have received if the agreement had been carried into effect. Appellant admits that appellee was never informed by appellant that he had failed to effectuate this part of the agreement.

Appellee filed her petition in the chancery court, asking that appellant be required to furnish some security in lieu of the annuity with survivor's benefits, because he had failed to provide her with these benefits at the time of his retirement. On October 4, 1977, the chancery court entered the decree from which this appeal is taken. By that decree, the court gave appellee judgment against appellant for $8,405.15, which the court found to be the present value of the retire-

ment benefits to which appellee would have been entitled had the agreement been carried into effect.

Appellant seeks reversal of the decree on the ground of impossibility of performance. This defense does not seem to have been raised by the pleadings, but it does appear from the record as a whole that it was an issue in the trial court. The chancery court rejected the defense of impossibility of performance, holding that appellant could have provided her with survivor's benefits as one having an insurable interest.

In order to properly evaluate the action of the chancery court, it is necessary that we consider the nature of the agreement between the parties, of which the quoted paragraph was a part. More particularly, we must determine what consideration was given by Natividad. She released Narciso from any and all claims and demands, including all claims upon him for support or maintenance, except as provided in the agreement. She assigned to him all right, title and interest in 80 acres of land. She released any interest in an automobile registered in Dr. Frigillana's name. There was a division of household goods. He received a savings account in a savings and loan association. There was a division of United States savings bonds in her possession. The agreement of the husband for support of the wife by the payment of $275 per month beginning January 5, 1969, and continuing until the death or remarriage of the wife or the sooner death of the husband was "in consideration of the promises and mutual covenants and agreements." There were other benefits to the husband and wife. She received an automobile registered in her name, certain savings accounts, and other benefits, including being named as irrevocable beneficiary in a life insurance policy.

Thus, it clearly appears that the provisions of the agreement are interdependent, that the undertaking of appellant in regard to his retirement benefits was only one of his obligations under the contract and that appellee gave consideration therefor. It seems plausible that this clause was in lieu of increased support or in satisfaction of other demands the wife might have made for other property. Thus the portion of the agreement appellant failed to perform was dependent upon other undertakings and obligations on the

part of both parties and the other undertakings and obligations were dependent upon that agreement. As appellant points out, this section is only one of 15 sections.

The educational background of appellant is pertinent to the subject of our inquiry. At the time of the agreement, he had received the following degrees: Bachelor of Commercial Science, Southeastern University, Washington, D.C.; Bachelor of Laws, 1933, Southeastern University, Washington, D.C.; Master of Laws, 1934, Southeastern University, Washington, D.C.; Master of Patent Law, 1935, National University, Washington, D.C.; Doctor of Juridical Science, 1935, National University, Washington, D.C. He had been admitted to practice by the United States Supreme Court. Dr. Frigillana testified that, when he retired he knew, and knows now, that he had an obligation under the property settlement agreement to provide for this survivor's benefit for appellee. He freely admitted that he had bound himself under this agreement to take a reduced annuity upon his retirement, with a survivor's benefit in favor of appellee. He stated that he was willing to do anything in accordance with the regulations that will permit a divorced spouse to do what was necessary and required to have provided appellee with survivor's benefits. He testified that when he retired, in April, 1972, he was unmarried. He said that he wanted to make an application for a survivor's benefit for Natividad, but when he asked "them" when he retired whether he could execute a form to carry out the agreement, "they just said, nothing." He said that when he asked the orientation officer, he received the reply, "Well, Buddy, here's the regulations, single . . . According to Dr. Frigillana, at the time of retirement he had a choice of civil service annuities, and, by electing to take an annuity without survivor's benefits, he is receiving a higher monthly retirement than he would if he had taken an annuity with survivor's benefits. Dr. Frigillana justifies his failure to perform his admitted contractual obligation only on the statement that "it was impossible to perform."

The burden of proving impossibility of performance, its nature and extent and causative effect rests upon the party alleging it. 18 Williston on Contracts [3rd (Jaeger) Ed.] 272, § 1978B; *Ocean Air Tradeways, Inc. v. Arkay Realty Corp.*, 480 F. 2d 1112 (9 Cir., 1973); *Paddock v. Mason*, 187 Va. 809, 48 S.E.

2d 199 (1948); *Great American Ins. Co. of New York* v. *City of Boulder*, 476 P. 2d 586 (Col. App. 1970); *Smith* v. *Zepp*, 173 Mont. 358, 567 P. 2d 923 (1977). He must show that he took virtually every action within his power to perform his duty under the contract. *Kama Rippa Music, Inc.* v. *Schekeryk*, 510 F. 2d 837 (2 Cir., 1975). It must be shown that the thing to be done cannot be effected by any means. *Standard Oil Co. of New York* v. *Central Dredging Co.*, 225 App. Div. 407, 233 N.Y.S. 279 (1929). Resolution of the question requires an examination into the conduct of the party pleading the defense in order to determine the presence or absence of fault on his part in failing to perform. *Lowenschuss* v. *Kane*, 520 F. 2d 255 (2 Cir., 1975).

It is at least doubtful that appellant met his burden. He was rejected without any real effort on his part. It appears that his rejection was by an orientation officer. The application was to be made to the Civil Service Commission, and it was the only agency that could reject the application. But appellant never filed one and accepted this "rejection," even though the question was at least arguable. Under the federal regulations introduced in evidence on the subject, it appears that an unmarried employee retiring may elect an annuity with survivor's benefits to a named person having an insurable interest. They did not permit more than one person to be named and a contingent survivor annuitant was not acceptable. Dr. Frigillana stated flatly that appellee had no insurable interest. The chancellor held that she did. The question is at least debatable. In oral argument, appellant's attorney took the position that, while Natividad had an insurable interest, insofar as the legal definition of the term is concerned, under civil service regulations she did not have such an insurable interest as entitled her to a survivor's benefits.

There is respectable authority supporting the chancellor's view that appellee had an insurable interest. *Begley* v. *Miller*, 137 Ill. App. 278 (1907); *Lynch* v. *Bogenrief*, 237 N.W. 2d 793 (Iowa, 1976); *Tromp* v. *National Reserve Life Ins. Co.*, 143 Kan. 98, 53 P. 2d 831 (1936). In considering insurable interest in the life of another in *Home Mutual Benefit Association* v. *Keller*, 148 Ark. 361, 230 S.W. 10, we quoted

liberally from *Warnock* v. *Davis*, 104 U.S. 775, 26 L. Ed. 924 (1881). A part of that quotation is:

> * * * But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured.

Since appellee was receiving $275 per month from appellant as long as he lived, she could expect a benefit or advantage from his continued living. It was also recognized in the quotation in the above Arkansas case that a creditor has an insurable interest. Appellee would fall into both the category of creditor and that of one who has an advantage in the continued life of her divorced husband. *Lynch* v. *Bogenrief,* supra; *Tromp* v. *National Reserve Life Ins. Co.,* supra.

We need not decide whether the chancellor was wrong, because the most important obstacle to appellant's position is the fact that impossibility of performance by one contracting party does not necessarily bar a recovery by the other party who was entitled to expect performance. There is a quasi-contractual obligation owing by the party whose performance has become impossible to pay the other party the net value of the advantage the defaulting party has derived from the non-performance of his impossible promise. 18 Williston on Contracts (3rd Ed.) 212, § 1969. Where the other party has partly or wholly performed without receiving compensation from the party whose performance is impossible, justice requires the imposition of a quasi-contractual obligation on the party receiving such performance to pay its fair value. 18 Williston on Contracts 226, § 1972. See *Martz* v. *Continental Casualty Co.,* 141 Pa. Super. 187, 14 A. 2d 863 (1940).

An excellent summary of the appropriate treatment of recovery where there is partial impossibility of performance of a contract that has been partially performed is found in an annotation appearing in 144 ALR at p. 1317. At p. 1326, the annotator states:

The law governing the question under annotation in the United States is stated in American Law Institute Restatement, Contracts, Vol. 2, § 468 (2) (See also American Law Institute Restatement, Restitution, § 108 (c) ), as follows: "Except where a contract clearly provides otherwise, a party thereto who has rendered performance for which the other party is excused by impossibility from rendering the agreed exchange, can get judgment for the value of what he has rendered, less the value of what he has received, unless what he has rendered can be and is returned to him in specie within a reasonable time."

This rule applies irrespective of whether the party claiming under the rule has performed fully or in part (see American Law Institute Restatement, Contracts, Vol. 2, § 468, Comment b); and irrespective of whether the claimant has paid money or performed in values other than money (see Am. Law Inst. Restatement, Contracts, Vol. 2, § 468, Comment c, Illustration 5). The rule embraces situations involving either a total or a partial failure of consideration; that is, situations in which the party whose performance is excused by the supervening impossibility, and who is sought to be held liable, has, or has not, performed in part, prior to the occurrence of the event which constitutes the supervening impossibility.

The matter is one falling within the scope of the judicial doctrine of restitution, which is succinctly stated at 77 CJS Restitution 322, viz:

Restitution, in legal nomenclature, is an equitable principle, and is founded on the equitable maxim that he who seeks equity must do equity, and one of the grounds on which the doctrine is based is that when one person confers a benefit on another through mistake, whether of fact or law, the other is liable to make restitution. It is sometimes considered to be the modern designation for the older doctrine of quasi contracts.

A cause of action for restitution is a type of the broader cause of action for money had and received, and

generally the object to be attained in proceedings for restitution is the prevention of unjust enrichment of defendant and the securing for plaintiff of that to which he is justly and in good conscience entitled. A person who has been unjustly enriched at the expense of another is required to make restitution to the other, and if one obtains the property or the proceeds of property of another, without a right to do so, restitution in a proper case can be compelled. It has been said that restitution, properly speaking, is made only to a defendant whose money or property has been taken from him by the erroneous order of a court, and it is not available to third parties.

It is not necessary, in order to create an obligation to make restitution, that the party unjustly enriched should have been guilty of any tortious or fraudulent act; the question is: Did he, to the detriment of someone else, obtain something of value to which he was not entitled? In such cases the simple, but comprehensive, question is whether the circumstances are such that equitably defendant should restore to plaintiff what he has received.

At common law the word "restitution" was employed to denote the return or restoration of a specific thing or condition, but in modern usage restitution may go beyond the act of returning the thing taken, and, in its broad sense, is not confined to the return of something of which one has been deprived, but includes compensation for loss, damage, or injury done to another.

Restitution is not of mere right, but is ex gratia, resting in the exercise of a sound discretion, and the court will not order it where the justice of the case does not call for it or where the process is set aside for a mere slip.

The general scope note to the Restatement of the Law, Restitution, states that it deals with situations in which one person is accountable to another on the ground that otherwise the former would unjustly benefit or the latter

would unjustly suffer loss. The authors continue by stating that, while the subject includes the rules usually classified under the heading of quasi-contracts, which is limited to actions at law to secure the payment of money, it also extends to actions for similar equitable remedies.

Thus, it is clear that principles applicable to the doctrine of unjust enrichment are applicable to a situation such as this. The doctrine had its origins in the action for money had and received, which was based upon the theory that there was an implied promise to pay. We spoke of the theory in *Patton* v. *Brown-Moore Lumber Co.*, 173 Ark. 128, 292 S.W. 383 (1927), saying:

> * * * The action is not dependent upon an express promise, and, as many authorities say, not even upon one implied in fact, but it is maintainable in all cases where one person has received money or its equivalent under such circumstances that, in equity and good conscience, he ought not to retain it, and, *ex aecuo et bono,* it belongs to another. And it is said that this is so, irrespective of whether the money was received from the plaintiff or from a third person. 2 R. C. L. 778.
>
> The authorities are practically unanimous in holding that, if one has money belonging to another, which, in equity and good conscience, he ought not to retain, it may be recovered, although there was no privity and no express contract or agreement. * * *

We have approved definitions of the doctrine that state that an action based upon it is maintainable in all cases where one person has received money or its equivalent under such circumstances that, in equity and good conscience, he ought not to retain it. *Fite* v. *Fite*, 233 Ark. 469, 345 S.W. 2d 362. According to Restatement of the Law, Restitution, a person who has been unjustly enriched at the expense of another is required to make restitution to the other. (See p. 12, § 1.)

Not only did Dr. Frigillana receive the benefit of the property settlement agreement, the casual, abject surrender of this well educated lawyer to an orientation officer's edict

on the question of Natividad's eligibility for survivor's benefits left him free to make an election not to name a survivor and to reap substantial benefits through higher retirement benefits to himself, an election he saw fit to make without offering any alternative to Natividad or even notifying her that he could not carry out his admitted obligation under the contract. To permit him to retain these benefits without securing to Natividad that to which she was justly and in good conscience entitled is an unjust enrichment of Dr. Frigillana which violates all principles of equity and good conscience and which requires that he be required to compensate her by an equivalent to his performance of the contract.

This the chancery court endeavored to do upon the basis of the testimony of W. Keith Sloan, Chief Actuary of the State Insurance Department, who stated that the present value of a monthly benefit of $358.05 to a female, presently age 66, whose date of birth was October 1, 1911, at the death of a male, presently age 74, whose date of birth is October 25, 1902, assuming 6% interest, was $19,776.82. The decree recites the following:

> * * * After applying the reductions required by law to arrive at a survivor's benefit under the facts of this case and after considering the testimony of W. Keith Sloan, Life and Health Actuary with the Insurance Department in Little Rock, Arkansas, his testimony being undisputed, the Court finds that the present value, applying 6% interest, of the survivor's benefit in this case is $16,810.30. The Court further finds that paragraph 14 of the agreement of the parties states that if the Defendant should leave a widow upon his demise this sum should be divided evenly between the widow and the Plaintiff. The Defendant has a wife at the present time. Accordingly, the Plaintiff is entitled to and should be awarded judgment against the Defendant for $8,405.15 for all of which execution should immediately be permitted to issue as upon a judgment at law.

This was certainly an equitable approach to restoration to Natividad that to which she was entitled under the agreement. The value of the increased payment to Dr. Frigillana

on an actuarial basis was not shown, and he offered no alternative to this compensation to Natividad for her loss.

Appellant argues that the chancery court should not have awarded appellee a money judgment, because, if Natividad dies before Narciso, she would not be entitled to any survivor's benefit, even if the performance of the contract had been possible. Appellant says the court should have ordered him to purchase an annuity which would afford appellee an income equivalent to that she would have received if he could have carried out the terms of the contract. This is probably what appellant should have done when he retired in April, 1972, and he had had ample opportunity to do so, but chose to rest upon the impossibility of his performance. Even when he testified during the trial, Dr. Frigillana testified that he was resisting Natividad's effort to ask for the present value of such a benefit because it proved that it was impossible for him to perform that part of the property settlement agreement.

The testimony of Sloan was based on a question which took into consideration the respective ages of the parties. But the court's judgment was far less than the figure given by Sloan because the court applied reductions at 6% interest. The award has not been shown to be in excess of the additional benefits appellant has received and will receive during a normal life expectancy by electing to take the full retirement annuity. As appellee suggests, it might be difficult for Dr. Frigillana to obtain such an annuity at his present age of 74 years.

The decree is affirmed.

We agree. HARRIS, C.J., BYRD and HICKMAN, JJ.