KAREN R. BAKER, Associate Justice | gAppellants Courtyard Gardens Health and Rehabilitation, LLC and others[1] (collectively “Courtyard Gardens”) appeal from a Clark County Circuit Court order denying its motion to dismiss and compel arbitration of claims brought against it by appellee Malinda Arnold, as personal representative of the Estate of Jessie James Bullock, deceased, and as attorney-in-fact of Annie Bullock.[2] The complaint alleges that on approximately January 1, 2010, Jessie James Bullock was admitted to Courtyard Gardens, a nursing-home facility located in Arkadelphia, Arkansas. Mr. Bullock remained a resident of the facility until approximately April 10, 2012; he died on April 15, 2012. Mr. Bullock’s wife, Annie Bullock, was admitted to Courtyard Gardens on approximately May 6, 2009, and remained a resident of the facility until approximately December 7, .2012. On June 18, 2009, Linda Gulley, the Bullocks’ daughter, entered separate admission agreements and optional arbitration agreements on behalf of each parent. The arbitration agreement contained the following provision: | sIt is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred .to as a “claim” or collectively as “claims”) arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, (“NAF”) which is hereby incorporated into this Agreement, and not by a lawsuit or resort to court process. This agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16. On July 25, 2013, Arnold filed a complaint against Courtyard Gardens in the Clark County Circuit Court. The complaint alleged negligence, medical malpractice, violations of the Long-Term Care Facility Residents’ Rights' Act, breach of the provider agreement, violations of the Deceptive Trade Practices Act, and negligence against appellant Angela Marlar, in her capacity as administrator of Courtyard Gardens. On August 27, 2013, Courtyard Gardens filed an answer to Arnold’s complaint and reserved the right to enforce any applicable arbitration agreement after conducting an initial investigation to determine whether a valid arbitration agreement exists. On December 23, 2013, Courtyard Gardens' filed a motion to dismiss the'complaint and compel arbitration. Courtyard Gardens argued that the arbitration agreement was valid and encompassed all of the ■claims in Arnold's complaint. On January 9, 2014, Arnold filed her response to the motion to dismiss and motion to compel arbitration. In her response, Arnold argued that the arbitration agreement.was unenforceable based , on impossibility of performance and unconscionability. Specifically, Arnold argued that the arbitration agreement was impossible to perform because the agreement selected the National Arbitration Forum (“NAF”) to serve has arbitrator and the NAF is now unavailable because it had settled with |4the Minnesota Attorney General and agreed to no longer conduct any arbitration pursuant to pre-dispute consumer agreements. On July 16, 2014, Courtyard Gardens filed a supplement to its. motion to dismiss complaint and compel arbitration. Courtyard Gardens argued that the arbitration agreements only required arbitration in accordance with the NAF Code and did not select the NAF as the actual arbitrator. Further, Courtyard Gardens argued that the circuit court must compel arbitration based on the attached affidavit of Angela Marlar, who explained “Courtyard Gardens’ overriding intent in entering these arbitration agreements is simply to have any and all disputes with a resident resolved through arbitration rather than litigation, regardless of the logistics.” On July 25, 2014, Arnold filed her response to Courtyard Gardens’ supplement,. Arnold argued that Ms. Marlar’s affidavit violated the parol-evidence rule because it contradicted the terms of the arbitration agreement. ' On July 28, 2014, a hearing-was held, and the circuit court denied the motion to compel arbitration. On August’29, 2014, the circuit court memorialized its findings in a written order.. In denying Courtyard Gardens’ motion to dismiss and motion to compel arbitration, the circuit court found that the parties had entered into a valid arbitration agreement and found that the arbitration agreement was not unconscionable. As to Arnold’s defense of impossibility of performance, the circuit court found, as follows: The Arbitration Agreement is impossible to perform because it incorporates the National Arbitration Forum (“NAF”) Code of Procedure. Rule 1 of the NAF Code of Procedure requires the NAF to serve as arbitrator of any disputes between the Plaintiff and Defendants. As such, the NAF Code of Procedure is an integral term of the Arbitration Agreement. Because the NAF is no longer in business and is unavailable to serve as arbitrator over this dispute, the Agreement is impossible to perform. IfiOn September 26, 2014, Courtyard Gardens filed its notice of appeal. On appeal, Courtyard Gardens argues that the circuit court erred in finding that the arbitration agreement was unenforceable, thereby denying Courtyard Gardens’ motion to compel arbitration. An, order denying a motion to compel arbitration is an immediately appealable order under Arkansas Rule of Appellate Procedure-Civil 2(a)(12) (2015). We review a circuit court’s order denying a motion to compel arbitration de novo on the record. Searcy Healthcare Ctr., LLC v. Murphy, 2013 Ark. 463, at 3, 2013 WL 6047164 (citing HPD, LLC v. TETRA Techs., Inc., 2012 Ark. 408, 424 S.W.3d 304). . The parties agree that the Federal Arbitration Act (“FAA”) governs the arbitration agreement at issue. In Regional Care of Jacksonville, LLC v. Henry, we explained that Congress enacted the FAA, 9 U.S.C. §§ 1-16, to overcome judicial resistance to arbitration. 2014 Ark. 361, at 6, 444 S.W.3d 356, 360 (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)). Section 2 of the FAA provides as follows: A written provision ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction,, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such, a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2. The Act, which rests on Congress’ authority under the Commerce Clause, supplies not, simply a procedural framework applicable in federal courts; it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration. Preston v. Ferrer, 552 U.S. 346, 349, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) (citing Southland Corp. v. Keating, 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). The primary purpose of the FAÁ, is to ensure that private agreements to arbitrate are enforced according to their terms. Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ., 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). To this end, the Supreme Court recognizes that parties are generally free to structure their arbitration agreements as they see fit. Id. With the enactment of the FAA, Congress declared a -national policy favoring arbitration when the' parties contract for that mode of dispute resolution. Preston, 552 U.S. at 349, 128 S.Ct. 978 (citing Southland Corp. 465 U.S. at 16, 104 S.Ct. 852). In DIRECTV, Inc. v. Imburgia, — U.S.-, 136 S.Ct. 463, 468, 193 L.Ed.2d 365 (2015), the Court disapproved of the California Court of Appeal’s interpretation of an arbitration clause because it resulted in the failure to place'arbitration agreements “on equal footing with all other contracts.” Id. (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. at 443, 126 S.Ct. 1204). The DIRECTV, Inc. Court reasoned that the California court’s decision failed to give “due regard ... to the federal policy favoring arbitration.” Id. at 471 (citing Volt Info. Sci., Inc., 489 U.S. at 476, 109 S.Ct. 1248). Likewise, as a matter of public policy, arbitration is strongly favored in Arkansas. Hart v. McChristian, 344 Ark. 656, 42 S.W.3d 552 (2001). Arbitration is looked upon with approval as a less expensive and more expeditious means of settling litigation and relieving docket corigestion. Id. Any doubts and ambiguities of coverage will be resolved in favor of arbitration. Id. In light of the public policy favoring arbitration, such agreements will not be construed strictly but will be read to include subjects within the spirit of the parties’ agreement. Id: 17-93 Despite an arbitration provision being subject to the FAA, courts look to state contract, law to determine whether the parties’ agreement to' arbitrate is valid. GGNSC Holdings, LLC v. Chappel, 2014 Ark. 545, 453 S.W.3d 645. The same rules of construction and ^interpretation apply to arbitration clauses as apply .to agreements generally. Hart, 344 Ark. 656, 42 S.W.3d 552. The construction and legal effect of a. written, contract to arbitrate are to be determined by the court as a matter of law. Id. Accordingly, we will give effect to the parties’ intent as evidenced by the arbitration agreement itself. Id. In HPD, LLC v. Tetra Techs., Inc., we explained: In deciding whether to grant a motion to c.ompel arbitration, two threshold questions must be answered. First, is there a valid agreement to- arbitrate between the parties? Second, if such an agreement exists,. does the dispute fall within its scope? In answering these questions, doubts about arbitrability must be resolved in favor of arbitration. Further, the court (rather than the arbitrator) decides these questions of arbi-trability, unless the parties clearly and unmistakably delegate that issue to the arbitrator. Based on the principle that arbitration is a matter of contract, the question of “who has the primary power to decide arbitrability” turns upon what the parties agreed about that matter. 2012 Ark. 408, at 6, 424 S.W.3d 304, 308 (internal citations omitted). Here, the circuit court found that the “Arbitration Agreement is valid and encompasses the dispute at issue.” The record demonr strates that the circuit court’s ruling was correct. I. Unavailability of the NAF The crux of the disagreement here is the unavailability of the NAF. The parties agree that the NAF is- no longer conducting arbitrations of this type. In 2009, after the Attorney General of Minnesota filed an action alleging that the NAF had engaged in violations of consumer-protection laws, the NAF entered into a consent decree-barring it from handling consumer arbitrations. CompuCredit Corp. v. Greenwood, — U.S. —132 S.Ct. 665, 677 n. 2, 181 L.Ed.2d 586 (2012) (Ginsburg, J., dissenting) (citing Press Release by Lori Swanson, Att’y Gen. of Minn. (July 19, 2009)). |sOn appeal, Courtyard Gardens asserts that the circuit court erred in finding that the arbitration agreement was unenforceable and denied its motion to compel arbitration. Specifically, Courtyard Gardens argues that the circuit court’s decision to deny its motion based on impossibility of performance should be reversed. In response, Arnold argues that because the NAF is unavailable to arbitrate the dispute, the arbitration agreement is unenforceable based on the defense of impossibility of the performance. Turning to whether the circuit court erred in finding that Arnold satisfied her burden of proving the affirmative defense of impossibility of performance, we are mindful of the United States Supreme Court’s mandate that arbitration agreements be placed on “equal footing with all other contracts.” DIRECTV, Inc., 136 S.Ct. at 468. We are also mindful of our public policy in favor of arbitration. In HPD, LLC v. TETRA Techs., Inc., we explained that [o]ur object is to ascertain the intention of the parties, not from particular words or phrases, but from the entire context of the agreement. It is well settled that a contract should be construed so that all of its parts are in harmony, if that is possible. In seeking to harmonize different clauses of a contract, we should not give effect to one to the exclusion of the other even though they seem conflicting or contradictory, nor adopt an interpretation which neutralizes a provision if the various clauses can be reconciled. 2012 Ark. 408, at 11, 424 S.W.3d at 310-11 (citations omitted). Here, the arbitration agreement provides in pertinent part, It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a “claim” or collectively as “claims”) arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in |Baccordance with the National Arbitration Forum Code of Procedure, (“NAF”) which is hereby incorporated into this Agreement, and not by a lawsuit or resort to court process. This agreement shall be governed by and. interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16. [[Image here]] In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the Agreement shall remain effective. THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES, AND THÁT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES. With regard to impossibility of performance, we have explained the standard to determine whether the defense of impossibility of performance is satisfied in Frigillana v. Frigillana, 266 Ark. 296, 584 S.W.2d 30 (1979): The burden of proving impossibility of performance, its nature and' extent and causative effect rests upon the party alleging it. He must show that he took virtually every action within his power to perform his duty under the contract. It must be shown that the thing to be done cannot be effected by any means. Resolution of the question requires an examination into the conduct of the party pleading the defense in order to determine the presence or absence of fault on his part in failing [to] perform. Id. at 302-03, 584 S.W.2d at 33 (citations omitted). Further, we have drawn a “distinction between objective impossibility, which amounts to saying, ‘[t]he thing cannot be done,’ and subjective impossibility!,] T cannot do it.’ ” Christy v. Pilkinton, 224 Ark. 407, 407, 273 S.W.2d 533, 533 (1954) (quoting Restatement (First) of Contracts § 455 emt. a (1932)). Only cases involving objective impossibility of performance are excused. Id. A review of Arkansas cases involving the defense of impossibility of performance demonstrates that the burden of proving impossibility ' is an exceedingly difficult standard to overcome. See Smith v. Decatur Sch. Dist., 2011 Ark. App. 126, 2011 WL 549057 (defense of impossibility of performance' was available where state or federal regulatory agency issued an order preventing performance of the contract and the contract could not be performed without violation of the governmental order); Holton v. Cook, 181 Ark. 806, 27 S.W.2d 1017 (1930) (incapacitation of ap-pellee’s daughter to pursue her studies rendered performance impossible and relieved appellee from liability for tuition anil board for the balance of the year); C.G. Davis & Co. v. Bishop, 139 Ark. 273, 213 S.W. 744 (1919) (defense of impossibility of performance applied and excused the seller’s liability in a contract for the sale of crops when weather conditions or matters outside the seller’s control prevented him from delivering the number of crops contemplated by the contract). Arnold argues that because the arbitration agreement incorporates the NAF Code and because the NAF Code can only be administered by the NAF, the arbitration agreement effectively selects the NAF as arbitrator. Thus, because the NAF is unavailable to arbitrate the dispute, the agreement is impossible to perform. To support her position, Arnold cites to Rule 1(A) of the NAF Code of Procedure. Rule 1(A) states, “This Code shall be administered only by the' National Arbitration Forum or'by any entity or individual providing [ ¶ jadministrative services by agreement with the National Arbitration Forum.” Pursuant to Frigillana, Arnold bears the burden of proving that the arbitration agreement is impossible to perform.[3] Arnold has clearly failed to satisfy her burden of proving impossibility of performance. Stated differently, Arnold has failed to demonstrate that the agreement to arbitrate “cannot be effected by any means.” Rule 1(A) of the NAF Code of Procedure is- qualified by Rule 48(C), which states that “[i]n the event a court of competent jurisdiction shall find any portion of this Code or Fee Schedule to be in violation of the law or otherwise unenforceable, that portion shall not be effective and the remainder of the Code shall remain effective.” See Green v. U.S. Cash Advance Illinois, LLC, 724 F.3d 787, 789 (7th Cir. 2013). Thus, the NAF’s Code of Procedure remains available even when the NAF is not serving as the arbitrator. Further, Rule 48(D) of the .NAF Code provides, “[i]f Parties are denied the opportunity to arbitrate a dispute, controversy or Claim before the Forum, the Parties may seek legal and other remedies in accord with applicable law.” Arnold also cites to Rule 48(E), which states that “[i]n the event of a cancellation of this Code, any Party may seek legal and other remedies regarding any matter upon which an Award or Order has not been entered.” However, Arnold has failed to offer proof that the" NAF Code has been | ^cancelled. In reviewing the applicable law identified by the parties in their agreement, the agreement states that it “shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16.” Section 5 of the FAA specifically contemplates the possibility that a designated arbitrator may be unavailable to arbitrate the dispute and requires the appointment of a substitute arbitrator when the NAF is unavailable: If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be . provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the contro- . versy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act’under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator. 9 U.S.C. § 5 (emphasis added). Thus, section 5 applies, and the circuit court “shall” appoint an arbitrator. Applying a de novo review to the circuit court’s findings, and after careful review • of the arbitration agreement, we hold that the arbitration agreement is not unenforceable based on the defense of impossibility of performance. II. Integral-Term versus Ancillary-Logisticálr-Concem Test Further, the integral-term versus ancillary-logistical-concern test employéd by the parties supports this court’s decision that Arnold has failed to satisfy her burden of proving the defense of impossibility of performance. As noted above, the FAA governs the arbitration agreement at issue. The majority of courts that have addressed whether a substitute arbitrator can be appointed pursuant to section 5 of the FAA have utilized the approach set out in Brown v. ITT Consumer Financial Corp., 211 F.3d 1217 (11th Cir.2000). In Brown, the court focused its inquiry on whether the reference to the arbitral forum named in the arbitration agreement was integral to the parties’ decision to arbitrate or merely a logistical ancillary concern. Mat 1222. Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern will the failure of the chosen forum preclude arbitration. Id. “This question has vexed courts across the country and resulted in a substantial split of authority.” Meskill v. GGNSC Stillwater Greeley, LLC, 862 F.Supp.2d 966, 972 (D.Minn. 2012). In Brown, the court held that “there is no evidence that the choice of the NAF as the arbitration forum was an integral part of the agreement to arbitrate. Brown’s argument that the arbitra-^ tion agreement is void because the NAF was unavailable must fail.” 211 F.3d at 1222. See also Khan v. Dell, 669 F.3d 350 (3rd Cir. 2012) (designation of the NAF as arbitrator is not “integral” to arbitration agreements and § 5 may- be used to appoint a substitute arbitrator); Meskill, 862 F.Supp.2d 966 (holding that the unavailability of the NAF could be’ remedied by appointing a substitute arbitrator under the FAA, because the designation of the NAF was not integral to the agreement); but see, Miller v. GGNSC Atlanta, LLC, 323 Ga.App. 114, 746 S.E.2d 680 (2013) (the availability Of the NAF Code and, consequently, the availability of the NAF as’ an arbitral forum, are integral to the agreement); Carideo v. Dell, Inc., C06-1772JLR, 2009 WL 3485933 (W.D. Wash. Oct. 26, 2009) (the parties’ selection of the NAF as arbitrator is integral to the arbitration clause). Here, for the reasons that follow, we hold that’the NAF term whs merely an ancillary | ^logistical concern and that sec-tiori 5 of the FAA applies and provides a procedure for the appointment of a Substitute arbitrator. First, the “binding arbitration” language, 'as bolded and capitalized in’the arbitration agreement does not mandate that claims be arbitrated with the NAF; rather it requires arbitration as the sole means of resolving the claims. The fact that the NAF term is absent from the bolded and capitalized language supports the determination that it‘was the parties’ intent to resolve their disputes ’through binding arbitration regardless of the availability of the NAF. Second, the -mandatory language in the arbitration agreement, “shall,” applies to. arbitration, not the NAF or a particular arbitrator. The arbitration agreement states that the dispute “shall be resolved exclusively by binding arbitration, to, be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, (“NAF”) which is hereby incorporated into this Agreement, and not by a lawsuit or resort to court process. This agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16.” A review of the arbitration agreement demonstrates that the integral term of the arbitration agreement is “arbitration,” not the “NAF” • as an arbitrator. Meskill, 862 F.Supp.2d at 976 (citing Diversicare Leasing Corp. v. Nowlin, No. 11-CV-1037, 2011 WL 5827208, at *6 (W.D. Ark. Nov. 18, 2011)) (“lack of focus” on the NAF due to it being mentioned only once in three-page arbitration agreement “evidence[s] that the NAF was not a primary concern of the parties”). Thus, minimal reference to the NAF in this arbitration | ^agreement undermines Arnold’s argument that the. NAF term was integral to the parties’ agreement to arbitrate. Third, as stated previously, the arbitration agreement, requires thq use of the NAF’s Code of Procedure, not .that the NAF itself is required to conduct the arbitration. In Green, in interpreting an arbitration agreement in favor of arbitration, the court explained, “[i]f [the agreement] were designed to require arbitration to be conducted by the [NAF] exclusively, the reference to its Code would be surplusage; the only reason to refer to the Code is to create the possibility of arbitration outside the [NAF]’s auspices, but using its rules of procedure.” 724 F.3d at 789. Here, the reference to the NAF Code of Procedure and the accompanying footnote are the only references to the NAF in this arbitration agreement. Robinson v. EOR-ARK, LLC, No. 1:14-CV-01051, 2015 WL 5684140, at *1 (W.D. Ark. Sept. 28, 2015) (in granting the motion to compel arbitration and interpreting identical language, the court noted that “the agreement’s only mention of the NAF is in reference to the NAF Code of Procedure incorporated into the agreement and reference in a footnote”). By “invoking only the Code and not the NAF itself, the agreement suggests that the parties anticipated an entity other than the NAF might conduct the arbitration.” Id. (citing Meskill, 862 F.Supp.2d at 973). Thus, reference to the NAF Code of Procedure, rather than the NAF itself, further supports the conclusion that the NAF term was a mere ancillary concern. Fourth, the arbitration, agreement contains a severability clause, which further evidences the parties’ intent to arbitrate even if a portion of the arbitration agreement is | ^unenforceable. The severability clause states, “In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and. the remainder of the Agreement shall be effective.” In Nowlin, the court explained that the agreement contains a “severance provision that clearly allows for arbitration to go forward even where a portion of the agreement is held to be indefinite or invalid.” Id. at *6. The court, further found that “the severance provision indicates that the intention was not to make the [designated forum] integral, but rather to have a dispute resolution process through arbitration.” Id. (citing Jones v. GGNSC Pierre LLC, 684 F.Supp.2d 1161, 1167 (D.S.D.2010)). Further, in seeking to harmonize the severance- clause with the other clauses contained in the contract, as required by HPD, LLC, swpra, the severance clause operates to remove the unenforceable provision of the agreement. Here, the unenforceable language relates to the NAF as arbitrator. Once this unenforceable language is severed from the arbitration agreement, the parties must be compelled to resolve their dispute through arbitration. As we held in HPD, LLC\ “our object is to ascertain the intention of thé parties ... from the entire context of the agreement.” 2012 Ark. 408, at 11, 424 S.W.3d at 310-11. Based on the intention of the parties as expressed in the arbitration agreement, and in order to give effect to the arbitration requirement, the sole purpose of the parties’ agreement, we hold that the NAF term is merely an ancillary logistical concern and is severable.- Therefore, in light of our public policy in favor of arbitration and the réquirement that doubts about 117arbitrability be resolved in favor of arbitration, we hold that the circuit court erred in denying Courtyard Gardens’ motion to compel arbitration based on impossibility of performance.[4] We reverse and remand for the entry of an order compelling arbitration. Reversed and remanded. Danielson and Wynne, JJ., and Special Justice Ryan Allen dissent. Wood, J., not participating. . Senior Living Communities of Arkansas, LLC; Arkansas SNF Operations Acquisition, LLC; Arkadelphia Holdings, LLC; SLC Professionals, LLC; Arkansas Nursing Home Acquisition, LLC; Senior Vantage Point, LLC; 2701 Twin Rivers Drive, ÉLC; SLC Operations Master Tenant, LLC; SLC Professionals Holdings, LLC; Addit, LLC; CSCV Holdings, LLC; SLC Operations Holdings, LLC; EOR-ARK, LLC; SLC Operations, LLC; VAJ, LLC; Jerry V. Kemper; and Angela Marlar, in her capacity as administrator of Courtyard Gardens Health and Rehabilitation, . On January 23, 2007, Jessie Bullock executed his power of attorney and designated his daughters, Malinda Arnold and Linda Gulley, to act independently or jointly as his attorney-in-fact and agent. On January 7, 2010, Annie Bullock executed her power of attorney and designated her daughters, Malinda Arnold and Linda Gulley, to act independently or jointly as her attorney-in-fact and agent. On August 22, 2012, the Clark County Circuit Court entered an order appointing Malinda Arnold personal representative of the Estate of Jessie Bullock. . Arnold contends that because the NAF Code of Procedure is incorporated into the agreement, it adds 85 pages of additional terms to the arbitration agreement. However, we note that Arnold only introduced Rules 1, 2, and 48 of the NAF Code into the record. Arnold invites this court to look outside the record by stating that the NAF Code of Procedure is available at http://www.arb-forum.com. Matters outside, the record will, not be considered in making a ruling on appeal. See Estates of Seay v. Quinn, 352 Ark. 113, 98 S.W.3d 821 (2003). . On appeal, Arnold challenges the circuit court’s ruling that the "Arbitration Agreement applies to Plaintiff's claims in her Complaint against Defendants, not just Plaintiff’s claims against Courtyard Gardens Health and Rehabilitation, LLC.” However, Arnold did not file a notice of cross-appeal. A notice of cross-appeal is necessary when an appellee seeks something more than it received in the lower court. Moose v. Gregory, 267 Ark. 86, 590 S.W.2d 662 (1979). Further, on interlocutory appeal this court does not review rulings in favor of compelling arbitration. See Searcy Healthcare, LLC v. Murphy, 2013 Ark. 463, 2013 WL 6047164. Therefore, we decline to address Arnold’s argument on appeal.