COLLOTON, Circuit Judge.
The Arkansas Department of Human Services terminated its Medicaid provider agreements with Planned Parenthood of Arkansas and Eastern Oklahoma after the release of controversial video recordings involving other Planned Parenthood affiliates. Planned Parenthood of Arkansas and Eastern Oklahoma could have challenged the termination through an administrative appeal and judicial review in the Arkansas courts, but it declined to do- so. Instead, three Arkansas patients identified by the Planned Parenthood affiliate sued the Director of the Department under 42 U.S.C. § 1983, claiming that the Department violated a federal right of the patients under the Medicaid Act to choose any “qualified” provider that offers services that the patients seek.
The district court enjoined the Department from suspending Medicaid payments to Planned Parenthood of Arkansas and Eastern Oklahoma for services rendered to the three patients. The court later entered a broader injunction that forbids suspending payments for services rendered to a class of Medicaid beneficiaries. The'Director appeals, and we conclude that the plaintiffs do not have a likelihood of success on the merits of their claims. The provision of the Medicaid Act does not unambiguously create a federal right for individual patients that can be enforced under § 1983. We therefore vacate the injunctions.
I.
Planned Parenthood of Arkansas and Eastern Oklahoma, an affiliate of the Planned Parenthood Federation of America, operates health centers in Arkansas. We will call the local affiliate “Planned Parenthood” for short. The district court found that the Arkansas health centers “provide family planping services to men and women, including contraception and contraceptive counseling, screening for breast and cervical cancer, pregnancy testing and counseling, and early medication abortion.”
As of 2015, Planned Parenthood and the Arkansas Department of Human Services were parties to contracts under which Planned Parenthood participated in the Arkansas Medicaid program. The contracts provided that either party could terminate them without cause by giving thirty days’ notice. The Department also could terminate the contracts immediately for several reasons, including for conduct that is sanctionable under the applicable Medicaid Provider Manual.
*1038 On August 14, 2015, Governor Hutchinson of Arkansas directed the Department to terminate its Medicaid provider agreements with Planned Parenthood. The Governor said in a public statement that it was “apparent ... after the recent revelations on the actions of Planned Parenthood, that this organization does not represent the values of the people of our state and Arkansas is better served by terminating any and all existing contracts with them.” Context makes clear that the “recent revelations” to which the Governor referred were video recordings released by the Center for Medical Progress that purported to show employees of other Planned Parenthood affiliates discussing the sale of fetal tissue for profit. The parties dispute whether the Planned Parenthood affiliates involved in the recordings engaged in any unlawful or unethical conduct.
The Department, on August 14, 2015, notified Planned Parenthood that it was terminating the Medicaid provider agreements, effective thirty days later, and notified Planned Parenthood of its right to file an administrative appeal. Before the thirty days expired, on September 1, the Department sent a second notice. This one stated that the Department was terminating its agreements with Planned Parenthood for cause, because “there is evidence that [Planned Parenthood] and/or its affiliates are acting in an unethical manner and engaging in what appears to be wrongful conduct.” Rather than discontinue the contracts immediately, however, the Department set the termination date for September 14, 2015, the same date specified in the first letter.
Federal regulations authorized by Congress and promulgated by the Secretary of Health and Human Services require each State to establish appeal procedures for Medicaid providers. 42 U.S.C. §§ 1396a(a)(4), (39); 42 C.F.R. § 1002.213. Under Arkansas law, a provider who is terminated has a right to file an administrative appeal within thirty days of the termination, and then to seek judicial review. Ark. Code R. § 016.06.35-161.400; Ark. Code Ann. § 20-77-1718. Planned Parenthood, however, declined to exercise its appeal rights under Arkansas law and instead identified three patients who were willing to join the organization in a federal lawsuit.
On September 11,2015, Planned Parenthood and three patients identified as “Jane Does” sued the Department’s Director in the district court, seeking a temporary restraining order and a preliminary injunction to prevent the Department from terminating Planned Parenthood’s contract. The plaintiffs alleged that they were likely to prevail on a claim that the Department, by excluding Planned Parenthood from the Medicaid program for a reason unrelated to its fitness to provide medical services, had violated § 23(A) of the Medicaid Act. This section is described as the Medicaid “free-choice-of-provider” provision. 42 U.S.C. § 1396a(a)(23)(A). The plaintiffs further asserted that without an injunction, they would suffer irreparable harm. The plaintiffs claimed that § 23(A) creates a judicially enforceable right, a violation of which can be remedied through an action under 42 U.S.C. § 1983. The district court granted a temporary restraining order.
After further briefing by the parties, Planned Parenthood withdrew its claim for relief as a provider, but the Jane Does proceeded with their claims as patients, and the district court granted a preliminary injunction in favor of the Jane Does. The court concluded that § 23(A) creates a private right enforceable by the Jane Does under § 1983, and that they were likely to prevail on the merits of their claim that the Department unlawfully terminated its contract with Planned Parenthood. The *1039 court also determined that, without an injunction, the Jane Does would suffer irreparable harm. The Department appealed the grant of the preliminary injunction, and we heard oral argument.
After the appeal was submitted, the district court granted the plaintiffs’ motion to certify a class of “patients who seek to obtain, or desire to obtain, health care services in Arkansas at [Planned Parenthood] through the Medicaid program.” The district court then issued a second, broader injunction that forbids the Department to suspend Medicaid payments to Planned Parenthood for services rendered to Medicaid beneficiaries who are members of the class. The district court’s order granting the second injunction incorporated the court’s reasoning from the first order.
The Department filed a notice of appeal of the class-wide preliminary injunction. The parties then filed a joint motion requesting that we consolidate the two appeals, and they waived further briefing and argument. We consolidated the appeals and now consider them together.
II.
A party seeking a preliminary injunction must demonstrate, among other things, a likelihood of success on the merits. Munaf v. Geren, 553 U.S. 674, 690, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008). In this case, a threshold question bearing on likelihood of success is whether the Jane Doe plaintiffs and the certified class of Medicaid patients have a judicially enforceable right under the cited provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(23)(A). If the statute does not create an enforceable federal right, then the Jane Does and the class members cannot sue under § 1983, and there is no likelihood of success on the merits.
Section 1983 provides a cause of action against any person who, under color of law, subjects a citizen to the deprivation of any rights secured by the laws of the United States. Generally speaking, § 1983 supplies the remedy for vindication of rights arising from federal statutes. Maine v. Thiboutot, 448 U.S. 1, 4-8, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). For legislation enacted pursuant to Congress’s spending power, however, “the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State.” Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 28, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).
To support an action under § 1983, a plaintiff relying on a federal law must establish that Congress clearly intended to create an enforceable federal right. Gonzaga Univ. v. Doe, 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). There was a time, illustrated by Wilder v. Virginia Hospital Ass’n, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), when the Medicaid Act was deemed to create an enforceable right if the provision in question was “intend[ed] to benefit the putative plaintiff.” Id. at 509, 110 S.Ct. 2510 (alteration in original) (quoting Golden State Transit Corp. v. City of L.A., 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)). Starting from that premise, Wilder held that the Boren Amendment to § 13(A) of the Medicaid Act created a federal right for providers that was enforceable under § 1983.
Later decisions, however, show that the governing standard for identifying enforceable federal rights in spending statutes is more rigorous. It is not enough, as Wilder and Blessing v. Freestone, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), might have suggested, to show sim *1040 ply that a plaintiff “falls within the general zone of interest that the statute is intended to protect,” Gonzaga, 536 U.S. at 283, 122 S.Ct. 2268. It is now settled that nothing “short of an unambiguously conferred right” will support a cause of action under § 1983. Id.
Most' recently, therefore, the Court observed that Medicaid providers seeking to enforce §' 30(A) of the Medicaid Act did not rely on Wilder to proceed under § 1983, because the Court’s later decisions “plainly repudiate the ready implication of a § 1983 action that Wilder exemplified.” Armstrong v. Exceptional Child Ctr., Inc., — U.S. —, 135 S.Ct. 1378, 1386 n.*, 191 L.Ed.2d 471 (2015). The Court explained that Gonzaga expressly rejected the notion, “implicit in Wilder,” that something “short of an unambiguously conferred right” can support a cause of action under § 1983. Id. Armstrong thus made explicit what was implicit in Gonzaga, where the dissenting opinion concluded that the Court “sub silentio overruled] cases such as ... Wilder,” because the Boren Amendment .did not “clear[ly] and unambiguous[ly] intend enforceability under § 1983” 536 U.S. at 300 n.8, 122 S.Ct. 2268 (Stevens, J,, dissenting) (second and third alteration and emphasis in original) (citation omitted). Congress repealed former § 13(A) and the Boren Amendment in 1997, see Balanced Budget Act of 1997, Pub. L. No. 105-33, § 4711, 111 Stat. 251, 507-08, so the Court will have no occasion formally to overrule Wilder. But for purposes of our obligation to apply Supreme Court precedent, see Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), the Court’s “repudiation” of Wilder is the functional equivalent of “overruling,” as the Court uses the terms interchangeably. Obergefell v. Hodges, — U.S. —, 135 S.Ct. 2584, 2606, 192 L.Ed.2d 609 (2015); Keene Corp. v. United States, 508 U.S. 200, 215, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 864, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992),[2]
The provision at issue in this case appears in a section of the Medicaid Act concerning state plans for medical assistance. The Act provides, with exceptions not relevant here, that the Secretary of Health and Human Services “shall approve any plan which fulfills the conditions specified in subsection (a).” 42 U.S.C. § 1396a(b). Subsection (a), in turn, declares that “[a] State plan for medical assistance must” satisfy some eighty-three conditions. The condition involved here is § 23(A), namely, that the state plan must “provide that ... any individual eligible for- medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required ... who undertakes to provide him such services.” Id. § 1396a(a)(23)(A).
The Jane Does contend that § 23(A) creates an enforceable federal right for individual patients to receive services from any provider who is “qualified to perform the service” that they seek. If Planned Parenthood is qualified to perform the service, they argue, then § 1983 provides a remedy through which a court *1041 can require the State to maintain its contract with Planned Parenthood, so that the Jane Does can obtain assistance from that provider.
We see significant difficulties with the contention that § 23(A) unambiguously creates an enforceable federal right. First, the focus of the Act ⅛ two steps removed from the interests of the patients who' seek services' from a' Medicaid provider. Like the provision at issue in Armstrong, “[i]t is phrased as a directive to the federal agency charged with approving state Medicaid plans, not as a conferral of the right to sue upon the beneficiaries of the State’s decision to participate in Medicaid.” 135 S.Ct. at 1387 (plurality opinion). In other words, “[i]t focuses neither,on the individuals protected nor even on the funding recipients being regulated, but on the agenc[y] that will do the regulating.” Alexander v. Sandoval, 532 U.S. 275, 289, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). A statute that speaks to the government official who will regulate the recipient of federal funding “does not confer the sort of ‘individual entitlement’ that is enforceable under § 1983.” Gonzaga, 536 U.S. at 287, 122 S.Ct. 2268 (quoting Blessing, 520 U.S. at 343, 117 S.Ct. 1353). Even where a subsidiary provision includes mandatory language that ultimately benefits individuals, a statute phrased as a directive to a federal agency typically does not confer enforceable federal rights on the individuals. Univs. Research Ass’n, Inc. v. Coutu, 450 U.S. 754, 756 n.1, 772-73, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981).
Second, Congress expressly conferred anoth'er means of enforcing a State’s compliance with § 23(A)—the withholding of federal funds by the Secretary. 42 U.S.C. § 1396c. Congress also authorized the Secretary to promulgate regulations that are necessary for the proper and efficient operation of a state plan. Id. § 1396a(a)(4). Under that authority, the Secretary has required States to give providers the right to appeal an exclusion from the Medicaid program. 42 C.F.R. § 1002.213.[3] Because other sections of the Act provide mechanisms to enforce the State’s obligation under § 23(A) to reimburse qualified providers who are chosen by Medicaid patients, it is reasonable to conclude that Congress did not intend to create, an enforceable right for individual patients under § 1983. See Suter v. Artist M., 503 U.S. 347, 360-61, 363, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), superseded by statute on other grounds, 42 U.S.C. §§ 1320a-2, 1320a-10; see also Gonzaga, 536 U,S. at 281, 122 S.Ct. 2268 (applying Suter).
" Accepting the Jane Does’ position would result in a curious system for review of a State’s determination that a Medicaid provider is not '“qualified.” Federal law, as noted, requires that when a State termi-natés a Medicaid provider, the State must afford the provider an opportunity for administrative appeal and judicial review in the state courts. Under the Jane .Does’ vision, while the provider is litigating its qualifications in the state courts, or after the provider unsuccessfully appeals a determination that it is not qualified, individual patients separately could litigate or relitigate the qualifications of the provider in federal court under § 1983. Each adju *1042 dicator must apply a rather imprecise standard, asking whether the provider is “qualified to perform the service or services required.” The potential for parallel litigation and inconsistent results gives us further reason to doubt that Congress in § 23(A) unambiguously created an enforceable federal right for patients. Cf. Gonzaga, 536 U.S. at 292, 122 S.Ct. 2268 (Breyer, J., concurring in the judgment).
Third, statutes with an “aggregate” focus do not give rise to individual rights. Gonzaga, 536 U.S. at 288, 122 S.Ct. 2268 (quoting Blessing, 520 U.S. at 343, 117 S.Ct. 1353). This court in Midwest Foster Care & Adoption Ass’n v. Kincade, 712 F.3d 1190 (8th Cir. 2013), reasoned that where “a statute links funding to substantial compliance with its conditions—including forming and adhering to a state plan with specified features—this counsels against the creation of individually enforceable rights.” Id. at 1200. “Focusing on substantial compliance is tantamount to focusing on the aggregate practices of a state funding recipient.” Id. at 1201; see Gonzaga, 536 U.S. at 288, 122 S.Ct. 2268 (explaining that Blessing “found that Title IV-D failed to support a § 1983 suit in part because it only required ‘substantial compliance’ with federal regulations”); Blessing, 520 U.S. at 335, 343, 117 S.Ct. 1353. The statute at issue in Midwest Foster Care concerned “payments on behalf of each child,” 42 U.S.C. § 672(a)(1) (emphasis added), thus arguably suggesting a focus on individuals, but this court concluded that the “substantial compliance funding condition” indicated that the statute had an aggregate focus. 712 F.3d at 1201.
Section 23(A) is likewise part of a substantial compliance regime. The Secretary is directed to discontinue payments to a State if he finds that “in the administration of the plan there is a failure to comply substantially” with a provision of § 1396a. 42 U.S.C. § 1396c(2). Although Wilder identified an enforceable right in former § 13(A) of the Medicaid Act despite the statute’s substantial compliance requirement, see Midwest Foster Care, 712 F.3d at 1201, we put little stock in that paradigm after Armstrong’s, express disavowal of Wilder’s mode of analysis. There is stronger reason after Armstrong to infer an aggregate focus for § 1396a(a)(23)(A) based on the substantial compliance funding requirement of § 1396c.
The Jane Does, citing decisions of other circuits, rely on the fact that § 23(A) refers to “any individual eligible for medical assistance,” and that the Medicaid Act speaks in mandatory language when it says that a state plan “must” provide for an individual to obtain assistance from a qualified provider. 42 U.S.C. § 1396a(a). They say that this text includes the sort of “rights-creating language” that supports an action under § 1983. See Planned Parenthood of Gulf Coast, Inc. v. Gee, 862 F.3d 445, 456-59 (5th Cir.), petition for reh’g filed, No. 15-30987 (July 13, 2017); Planned Parenthood Ariz. Inc. v. Betlach, 727 F.3d 960, 966-67 (9th Cir. 2013); Planned Parenthood of Ind., Inc. v. Comm’r of the Ind. State Dep’t of Health, 699 F.3d 962, 974-76 (7th Cir. 2012); Harris v. Olszewski, 442 F.3d 456, 461-62 (6th Cir. 2006).
In our view, this analysis gives insufficient weight to Gonzaga’s requirement of unambiguous intent and to the factors that we have discussed above: the reference to an “individual” is nested within one of eighty-three subsections and is two steps removed from the Act’s focus on which state plans the Secretary “shall approve,” 42 U.S.C. § 1396a(b); Congress directly and indirectly established other means of enforcing compliance, 42 U.S.C. § 1396c, 42 C.F.R. § 1002.213; and the substantial compliance funding condition of *1043 § 1396c suggests an aggregate focus. Where structural elements of the statute and language in a discrete subsection give mixed signals about legislative intent, Congress has not spoken—as required by Gonzaga, 536 U.S. at 280, 122 S.Ct. 2268— with a “clear voice” that manifests an “ ‘unambiguous’ intent” to confer individual rights. See John B. v. Goetz, 626 F.3d 356, 361-62 (6th Cir. 2010) (per curiam) (observing that a comparable argument based on the Act as a whole “has considerable support in the language of the statute,” but concluding that it was foreclosed by circuit precedent).[4]
The dissent, post, at 1051, asserts that it is “inappropriate” to consider the fact that § 1396a(a) is part of a directive to the Secretary, and proposes to decide the existence of an enforceable federal right based on a sentence fragment in § 1396a(a)(23). The dissent’s approach runs counter to basic rules of statutory interpretation. “Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.” Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012). The proper inquiry is whether Congress intended to create an enforceable federal right when it enacted the specific provision in question. Congressional intent or meaning is not discerned by considering merely a portion of a statutory provision in isolation, but rather by reading the complete provision in the context of the statute as a whole. Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); Davis v. Mich. Dep’t of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989); K-Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).
The decisions of other courts also can be explained in part by an evolution in the law. The authorities cited by the Jane Does rely significantly (and in the pre-2015 decisions, understandably) on the Supreme Court’s analysis in the now-repudiated Wilder decision. See Planned Parenthood of Ind., 699 F.3d at 976 (“Indiana’s position is hard to reconcile with Wilder....”); Harris, 442 F.3d at 463 (“Our conclusion ... comports with decisions of the Supreme Court [and other courts] that have recognized privately enforceable rights under § 1983 stemming from similar statutory language in the Medicaid Act.”) (citing Wilder, 496 U.S. at 510, 524, 110 S.Ct. 2510); see also Gee, 862 F.3d at 459-60 (following the Sixth and Seventh Circuits); Betlach, 727 F.3d at 966-67 (same). The Third Circuit in 2004 similarly relied on Wilder in reversing a district court’s decision that §§ 1396a(a)(8), 1396a(a)(10), and 1396d(a)(15) did not unambiguously create enforceable rights in light of Gonzaga. Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 184, 192-93 (3d Cir. 2004). A concurring opinion, however, suggested that the result might not endure: “While the analysis and decision of the District Court may reflect the direction that future Supreme Court cases in this area will take, currently binding precedent supports the decision of the Court.” Id. at 194 (Alito, J., concurring).[5]
*1044 In support of the view that Congress intends private- enforcement of § 23(A) under § 1983, amici National Health Law Program, et al., direct our attention to 42 U.S.C. § 1320a-2, That section, enacted in 1994, provides:
In an action brought to enforce a provision of [the Social Security Act], such provision is not to be deemed unenforceable because of its inclusion-in a section of [the Act] requiring a State plan, or specifying the required contents of a State plan. This section is not intended to limit or expand the grounds for determining the availability of private actions to enforce State plan requirements other than- by overturning any such grounds applied in Suter v. Artist M. [503 U.S. 347], 112 S.Ct. 1360 [118 L.Ed.2d 1] (1992), but not applied in prior Supreme Court decisions respecting such enforceability; provided, however, that this section is not intended to alter the holding in Suter v. Artist M. that section 671(a)(15) of [the Act] is not enforceable in a private right of action.
The Ninth Circuit found that this text was “hardly a model of clarity.” Sanchez v. Johnson, 416 F.3d 1051, 1057 n.5 (9th Cir. 2005). The operative first sentence addresses and apparently disapproves one portion of Suter: the Court had suggested that when a provision of the Adoption Assistance and Child Welfare Act required a state plan and specified the mandatory elements of a plan, it required only that a State have a plan approved by the Secretary which contained those features, not that the plan .actually be in effect. Suter, 503 U.S. at 358, 112 S.Ct. 1360; see Brief of National Health Law Program, et al. as Amici Curiae at 15.[6] We do not rely on this aspect of Suter, we assume that the State must have a plan that is in effect. The second sentence of § 1320a-2 declares what is “intended” by the statute, but does not include an operative provision that adds to the specific direction of the first sentence. See Scalia & Garner, supra, at 219-20 (explaining that “an expansive purpose ... cannot add to the specific dispositions of the operative .text,” whether the expression of purpose is contained in a preface or in the body of the text); cf. *1045 FERC v. Elec. Power Supply Ass’n, — U.S. —, 136 S.Ct. 760, 775 n.6, 193 L.Ed.2d 661 (2016) (“The operative provision is what counts.”). In any event, other points discussed in Suter, including the requirement of unambiguous notice to States about conditions on the receipt of federal funds and the significance of an alternative enforcement mechanism, were relevant considerations before Suter and are beyond the scope of § 1320a-2. See LaShawn A. v. Barry, 69 F.3d 556, 569 (D.C. Cir. 1995), vacated, 74 F.3d 303, and rev’d en banc on other grounds, 87 F.3d 1389 (D.C. Cir. 1996). The statute provides that Congress did not intend to alter the .holding of Suter, and the provision leaves undisturbed enough of Suter’s rationale to justify the holding.
Because. § 1320a-2 was adopted seven years before Gonzaga clarified the law in this area, moreover, the statute does not address the same question that a court must decide today. Section 1320a-2 speaks to when a “provision” is “deemed unenforceable”; we must decide whether a statute unambiguously “confers an individual right” that can be enforced under § 1983. Gonzaga, 536 U.S. at 284, 122 S.Ct. 2268. We know that § 1320a-2 did not freeze the law as it was before Suter in 1992: Armstrong confirmed that the 1990 Wilder decision has been repudiated by post-1994 precedent. See also Sanchez, 416 F.3d at 1057 n.5 (concluding that a court must apply Blessing and Gonzaga, which followed the enactment of § 1320a-2, in determining whether a provision of the Medicaid Act confers an individual right); Harris v. James, 127 F.3d 993, 1002 (11th Cir. 1997) (rejecting the proposition that courts must “determine the ‘federal rights’ question only according to the pre-Suter precedents”).
Section 1320a-2 does not show that § 23(A) of the Medicaid Act creates an enforceable right. This court in Midwest Foster Care interpreted § 1320a-2 to mean that a provision of the Act “cannot be deemed individually, unenforceable solely because of its situs in a larger regime ‘requiring a State plan or specifying the required contents of a state plan.’” 712 F.3d at 1200 (quoting 42 U.S.C. § 1320a-2). This does not mean that we should ignore the elements of the text discussed above—the structure of the statute and its focus on a federal regulator who is two steps removed from individual patients, the availability of alternative means to enforce compliance with the requirements of § 23(A), and the aggregate focus of the statute in light of its connection between funding and substantial compliance with the condition. Where a provision is included in a section of the Act requiring a state plan or specifying the required contents of a state plan, Congress still must create new rights in dear terms that show unambiguous intent before they are enforceable under § 1983. Conflicting textual cues are insufficient.
The plurality opinion in Part IV of Armstrong fortifies this conclusion. Four Justices considered whether Medicaid providers had a cause of action under the Medicaid Act itself to enforce § 30(A) of the Act. The first step iii that analysis was to determine whether Congress intended to confer individual rights upon a class of beneficiaries—the same inquiry that informs whether a statute confers rights enforceable under § 1983. Gonzaga, 536 U.S. at 285, 122 S.Ct. 2268. The Armstrong plurality concluded that § 30(A) lacked “rights-creating language,” because it was “phrased as a directive to the federal agency charged with approving state Medicaid plans, not as a conferral of the right to sue upon the beneficiaries of the State’s decision to participate in Medicaid.” 135 S.Ct. at 1387 (citing 42 U.S.C. § 1396a(b)). *1046 To accept amici’s suggestion here that § 1320a-2 precludes this analysis would require us to conclude that the Armstrong plurality overlooked § 1320a-2 or misunderstood it. Neither is likely.[7]
The lack of a judicially enforceable federal right for Medicaid patients does not mean that state officials have unfettered authority to terminate providers. Patients can receive services only from a willing provider. Medicaid providers whose contracts are terminated but who wish to continue providing services have an obvious incentive to pursue administrative appeals and judicial review in state court if the alternative avenue of recruiting patients to sue in federal court is not available. Providers and patients also may urge the Secretary to withhold federal funds from a State that fails to comply substantially with the condition of § 23(A). The absence of a remedy for patients under § 1983 therefore does not make the free-choice-of-provider provision an empty promise. We conclude only that Congress did not unambiguously confer the particular right asserted by the patients in this case.
Given our conclusion that § 23(A) of the Medicaid Act does not give the Jane Does or the class of Medicaid beneficiaries an enforceable federal right that supports a cause of action under § 1983, the plaintiffs do not have a likelihood of success on the merits of their claims. We need not address the Director’s alternative contention that the Jane Does failed to show that irreparable harm would result from the denial of an injunction because other qualified providers could provide the services that they seek. Without a likelihood of success on the merits, an injunction is not justified. The orders of the district court enjoining the Arkansas Department of Human Services from suspending Medicaid payments are therefore vacated.

. Pediatric Specialty Care, Inc. v. Arkansas Department of Human Services, 293 F.3d 472 (8th Cir. 2002), cited by the dissent, post, at 1049-50, 1050-52, preceded Gonzaga and did not consider whether the statutory provisions at issue there unambiguously conferred an enforceable right on the plaintiffs. Center for Special Needs Trust Administration, Inc. v. Olson, 676 F.3d 688 (8th Cir. 2012), also cited by the dissent, did not apply Gonzaga, was decided before Armstrong, and concerned a different provision of the Medicaid Act that is not at issue here.

. It was foreseeable that federal regulations would provide for state administrative and judicial review of provider exclusions, because Congress specified that the Secretary may exclude from any federal health care program a provider who is excluded by a State. 42 U.S.C. § 1320a-7(b)(5). The collateral federal consequences of a State exclusion led the Secretary to mandate that States afford due process protections to excluded providers. See Health Care Programs: Fraud and Abuse; Amendments to OIG Exclusion and CMP Authorities Resulting From Public Law 100-93, 57 Fed. Reg. 3298, 3322-23 (Jan. 29, 1992),

. Because we conclude that Congress did not unambiguously confer a federal right that is presumptively enforceable under § 1983, we do not adopt the view attributed to us by the dissent, post, at 1050-51, that Congress adopted a comprehensive administrative scheme that precludes private enforcement under § 1983. See Gonzaga, 536 U.S. at 284 n.4, 122 S.Ct. 2268.

. The district court in Sabree concluded:
*1044 Because Title XIX speaks more in terms of what a State must do to make itself eligible for funding versus the individual treatment of recipients, and because the State need only “comply substantially” with statutory provisions to receive funding, the Secretary’s function is to assess the "aggregate function of the State,” rather than "whether the needs of any particular person have been satisfied.”
Sabree ex rel. Sabree v. Houston, 245 F.Supp.2d 653, 660 (E.D. Pa. 2003) (citation omitted); see also Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel, 570 F.3d 520, 533 (3d Cir. 2009) (Stafford, J., dissenting).

. The Conference Report on § 1320a-2 quotes a portion of Suter stating that 42 U.S.C. § 671(a) "only goes so far as to ensure that the States have a plan approved by the Secretary which contains the listed 16 features” before explaining the "intent” of the statute:
The intent of this provision is to assure that individuals who have been injured by a State’s failure to comply with the Federal mandates of the State plan titles of the Social Security Act are able to seek redress in the federal courts to the extent they were able to prior to the decision in Suter v. Artist M., while; also making clear that there is no intent to overturn or reject the determination in Suter that the reasonable efforts clause to Title IV-E does not provide a basis for a private right of action.
H.R. Rep. No. 103-761, at 924, 926 (1994) (Conf. Rep.); see also H.R, Rep, No, 102-631, at 366 (1992) (stating that a predecessor bill with virtually identical language "only alters that portion of Suter v. Artist M. suggesting that failure of a state to comply with a state plan provision is not litigable as a violation of federal statutory rights”).

. The respondents, the Solicitor General, and several other amici brought § 1320a-2 to the Court's attention in Armstrong. Brief for Respondents at 43, Armstrong, 135 S.Ct. 1378 (No. 1415); Brief for the United States as Amicus Curiae at 29-30; Brief for American Ass’n of People with Disabilities, et al. as Amici Curiae at 15-16; Brief for American Medical Ass’n, et al. as Amici Curiae at 27-32; Brief for American Network of Community Options & Resources, et al. as Amici Curiae at 7, 19-24.