Cite as 2025 Ark. 111

# SUPREME COURT OF ARKANSAS

**No.** CV–23–404

| | |
|---|---|
| HICKORY HEIGHTS HEALTH AND REHAB, LLC; CENTRAL ARKANSAS NURSING CENTERS, INC.; NURSING CONSULTANTS, INC.; AND MICHAEL MORTON<br><br>APPELLANTS<br><br><br>V.<br><br><br>YASHIKA WATSON, AS GUARDIAN OF THE PERSON AND ESTATE OF ZEOLA ELLIS III<br><br>APPELLEE | **Opinion Delivered:** June 5, 2025<br><br><u>DISSENTING OPINION FROM DENIAL OF PETITION FOR REVIEW</u>. |

**NICHOLAS J. BRONNI, Associate Justice**

Arkansas law "strongly favor[s]" arbitration because it is "a less expensive and more expeditious means of settling litigation and relieving docket congestion." *Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, at 6, 485 S.W.3d 669, 673. The court of appeals' opinion contravenes that principle and invalidates countless arbitration agreements. Worse, it badly misapplies federal law and creates a circuit split that, absent this court's correction, is likely to be resolved by the United States Supreme Court. I'd grant the petition; vacate the court of appeals' decision; and uphold the underlying arbitration agreement.

1

The court of appeals erroneously concluded that the arbitration agreement here violated a federal regulation. That conclusion rests on a fundamental misunderstanding of the regulation at issue and, more importantly, basic administrative law principles.

Begin with the regulation. It provides, in relevant part, that long-term care facilities shall not require residents or their representatives "to sign an agreement for binding arbitration as a condition of admission." 42 C.F.R. § 483.70(m)(1). Undisputably, Hickory Heights conditioned admission to its facility on signing a binding arbitration agreement. And absent any additional context, one might reasonably believe that provision invalidated the arbitration agreement here.

But context matters. The relevant provision isn't a generally applicable rule governing the relationship between long-term care facilities and residents; it's a spending provision that outlines the requirements that long-term care facilities must follow "to participate in the Medicare and Medicaid programs." Revision of Requirements for Long-Term Care Facilities: Arbitration Agreements, 84 Fed. Reg. 34,718, 34,718 (July 18, 2019). Thus, by definition, it "does not purport to regulate" or invalidate "any arbitration agreement" between the resident and the facility. *Id.* Indeed, underscoring that fact, the Center for Medicare and Medicaid Services has explained that its power to enforce the relevant provision "does not [include] . . . the power to annul valid contracts." *Id.* at 34,729. Instead, CMS may only enforce that provision via its general power to penalize long-term care facilities. *See* 42 C.F.R. § 488.406 (CMS may, among other remedies, impose civil penalties, cut off payments, or shut down noncompliant facilities.). So the court of appeals badly erred when it held the relevant provision invalidated the arbitration agreement here.

2

That's bad enough.  But there's a bigger problem.  The court of appeals' opinion is not just bad law; it also creates a clear split with the Eighth Circuit.  In *Northport Health Services of Arkansas, LLC v. U.S. Department of Health & Human Services*, 14 F.4th 856 (8th Cir. 2021), that court held that the Federal Arbitration Act doesn't invalidate the regulation at issue because the regulation only governs the relationship between CMS and long-term care facilities.  Hence, as relevant here, the Eighth Circuit held—as I would—that the regulation "does not invalidate or render unenforceable any arbitration agreement" but simply "establishes the conditions for receipt of federal funding through the Medicare and Medicaid programs."  *Id.* at 868 ("CMS would simply enforce the regulation through a combination of administrative remedies, including denial of payment and civil monetary penalties."); *see also Does v. Gillespie*, 867 F.3d 1034, 1041 (8th Cir. 2017) (explaining that federal statutes that create conditions for the receipt of federal funding generally don't confer a private right of action, especially when expressed remedies are provided).  The court of appeals' decision belies that central holding.

Indeed, the court of appeals can't avoid that clear split by invoking the general proposition, repeated in *Northpoint*, that valid arbitration agreements under federal law could still be invalid under state law.  *See Hickory Heights Health & Rehab, LLC v. Watson*, 2025 Ark. App. 133, at 10, 707 S.W.3d 499, 506; *see also Northport*, 14 F.4th at 868 (explaining that under the FAA "generally applicable contract defenses, such as fraud, duress, or unconscionability" still apply).  On the contrary, the court of appeals' invocation of that general rule to buttress its erroneous reading of the regulation simply highlights that it has interpreted that regulation as a per se rule against arbitration agreements.  That erroneous

reading contradicts *Northport*'s holding and represents nothing more than "judicial hostility to arbitration agreements," something the FAA sought to prevent exactly a century ago. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  Moreover, its reliance on CMS's historical account—that these agreements have "long been considered a predatory practice that takes advantage of the elderly population"—shows that even its purported state-law unconscionability analysis was really just an erroneous federal analysis.

The court of appeals' analysis of federal law is wrong and creates a clear circuit split. We have a duty to correct that analysis and end the resulting split.  It's unfortunate that the majority disagrees, leaving it to the United States Supreme Court to rectify that clear error.

WOOD, J., joins.